## No. 10,998.

### HULTQUIST *v.* THE PEOPLE.

Decided May 4, 1925. Rehearing denied June 1, 1925.

Petition to have set aside a decree approving the report of a lunacy commission. Petition denied.

### *Reversed.*

1. INSANE PERSONS—*Procedure.* The procedure provisions of the Civil Code are not applicable to lunacy proceedings.

2. *Service.* In lunacy proceedings it is imperative that the sheriff deliver to defendant a copy of the complaint or arrest order, and failure in this respect constitutes reversible error.

3. *Notice of Hearing.* The giving of notice in compliance with section 550, R. S. '21, is mandatory, unless properly waived.

4. *Notice of Hearing.* The giving of the two days' notice to the guardian ad litem required by section 552, C. L. '21, is mandatory, and there is no statutory authority for waiver of the notice by the guardian.

5. *Hearing—Jury Trial.* Under the facts disclosed it is held that defendant was wrongfully deprived of an opportunity to demand a jury trial in accordance with the provisions of section 553, C. L. '21.

6. *Hearing.* On a review of the record in lunacy proceedings, it is held that defendant did not have the kind of a hearing to which she was entitled under the statute.

7. *Court Jurisdiction.* The jurisdiction of the court under chapter 18, C. L. '21, concerning insane persons, is a continuing one, and all proceedings, judgments and orders thereunder are of a continuing nature, open to change and modification on application of any party in interest.

8. *Review—Writ of Error.* In proceedings under chapter 18, C. L. '21, concerning insane persons, the orders of approval of the report of the commission, and commitment, are sufficiently final to authorize a writ of error thereto at any time until death or discharge of the alleged insane person.

9.    *Conservator—Appointment—Notice.* An order appointing a conservator for an alleged insane person, held invalid; where no notice was given to defendant or anyone in her behalf, of the application for appointment.

*Error to the County Court of Yuma County, Hon. I. L. Barker, Judge.*

Messrs. ALLEN, WEBSTER & DRATH, for plaintiff in error.

Mr. ROY T. JOHNSON, Mr. LEWIS HENKE, Mr. WALTER S. COEN, Mr. WILLIAM B. PAYNTER, Mr. OMER T. MALLORY, for the people.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THIS writ of error is to an order or decree of the county court of Yuma county in a lunacy proceeding there pending, approving, February 1, 1923, the report of the lunacy commission that the defendant in that proceeding, Jennie S. Hultquist, plaintiff in error here, was so insane as to endanger her person and property if allowed to go at large.

In connection with the review of the order and the commitment thereunder, plaintiff in error seeks also to have a review of a subsequent order of the same court in the same proceeding appointing a conservator of her estate.

A remarkable and lamentable state of facts is presented in this record. It is doubtful if its counterpart can be found in any recorded case. John Hultquist and his wife had been married for more than thirty years. Several sons and daughters were the fruit of the marriage. They were reasonably prosperous farmers and respected citizens of Yuma county. The husband and wife each owned an undivided one-half interest in the farm property, and it would seem that the prosperity that attended their joint efforts was due to her fully as much as to him. She was

an equal partner in the business operations. On the night of January 31, 1923, John Hultquist, the husband, without suggestion to his wife or knowledge by her, filed in the county court of Yuma county his verified complaint charging that she was so insane and distracted in mind as to endanger her person and property if allowed to be at liberty. The proceeding was under chapter 118, p. 336, S. L. 1915 (chapter 18, p. 337, C. L. 1921), which relates to insane persons and mental incompetents. A special procedure is therein provided. In accordance therewith, an order of arrest was at once issued dated the same day the complaint was filed. The next morning, February 1, the sheriff arrested the defendant, Mrs. Hultquist, and in his return on the writ recited that he had taken her into custody and at the same time delivered to her a copy of the complaint and a copy of the order of arrest. She was at once brought into court for examination and investigation by the lunacy commission appointed by the court whose first session was fixed at 9:30 o'clock in the forenoon of that day. A guardian ad litem was appointed by the court on the night of January 31, at 8:30 o'clock, and notice of appointment that he then received required him to attend the first session at the time designated. The guardian at such time appeared before the commission and waived, as an aggravated case, the five days' notice of the first meeting of the commission, which was required by statute to be given in such a proceeding. He also waived the two days' notice to himself of the first session of the commission, which the statute required must be given to him.

When Mrs. Hultquist was arrested on the morning of February 1, she was preparing to go to a country sale. As the law contemplates the sheriff was accompanied by a female assistant. A doctor whom defendant knew by name was with them. Defendant was taken at once from the place where she was to the office of the county judge. Before starting she attempted to telephone to a woman friend at Wray, the county seat, to meet her there, but

the telephone was taken from her hand and she was not allowed to communicate with her friend as she desired. There is a dispute as to whether a copy of the complaint or order of arrest was actually served upon her. The female attendant says she was present in the room where the defendant and the sheriff were, but saw no copy of either the complaint or order of arrest delivered by the sheriff to the defendant, but that the sheriff read copies. Mrs. Hultquist denies there was any reference made to either of these documents or that they were shown, delivered, or read to her, and that she did not know what the sheriff intended to do with her or the cause of her arrest. When she arrived at the office of the county judge she was introduced to the guardian. She had not seen him theretofore and has not thereafter seen him. He never spoke to her about the case or she to him, and she supposed he was there to see the county judge on some other business. There is some uncertainty as to what the return of the sheriff is, and it seems not to have been filed in the court until the following June. The sheriff did not testify before the commission or at the hearing on the application to vacate.

There was no hearing before the commission in the ordinary sense of that term; that is, no testimony was taken. The two members of the lunacy commission were doctors. They made no physical examination of Mrs. Hultquist. It was merely a case of silent observation on their part for a very short period of time. The county judge and the commissioners have no recollection of anybody testifying. The proceedings before the commission did not consume more than half an hour; some witnesses say not to exceed fifteen minutes. Immediately after the close of the inquest the defendant unattended went to a dentist's office to have some work done on her teeth, and then was put on a train for Denver about 10 o'clock in the forenoon; the whole proceeding being completed in about an hour after the arrest. The report of the lunacy commission's finding being approved at once by the county

judge, the order of commitment followed, which required the defendant to be confined in a hospital in Denver, which was not named, and commanded the sheriff to take her to the city of Denver, which was done, and she was delivered to the custody of a private physician who took her to Mercy Hospital where she afterwards submitted to an operation for goiter and remained in the hospital for about two weeks until her recovery, when she was allowed to leave the hospital unattended and be at large.

No further attempt has been made to restrain her of her liberty, and no further attempt to enforce the court's order. She has been living with her sister and other friends from that time to the present. The defendant has not been furnished adequate support by her husband from the time this proceeding was instituted. The possession of the farm has been with him or some one selected by him, and farming operations have been continued. Within a year from the time of the order of commitment and on January 24, 1924, the defendant, Mrs. Hulquist, filed an application in the county court to set aside the order of commitment upon grounds hereinafter stated, which request was denied. May 6, 1924, this writ of error was sued out to review the order or decree of February 1, 1923, approving the report of the lunacy commission and in connection therewith for a review of the subsequent order appointing the conservator. Such other facts as are pertinent will appear in the following discussion. The principal matters relied upon for a reversal are grouped under four headings: (1) All the proceedings of the county court from the time of the approval order down to the appointment of the conservator may be reviewed in this writ and the proceedings set aside for the failure of the lower court and the guardian ad litem properly to protect the interests of the defendant; the lunacy commission proceeding being a continuing one, subject at all times to correction. (2) The lower court was without jurisdiction to approve the report of the commission or adjudge plaintiff in error insane. (3) The judgment of

insanity was without due process of law.   (4) The conservator was improperly and erroneously appointed.

The defendant in error, the people, by the deputy district attorney and private counsel, controvert all these propositions.

1.   In view of the conclusion which we have reached, it is not necessary to determine whether the alleged failure or errors of the county court are jurisdictional or errors of less dignity.   This is not a civil action, and the procedure provisions of the Code of Civil Procedure are not applicable.   The proceeding is a special statutory one, and the special statute itself provides a procedure full and complete in itself.

We think the evidence makes it clear that the sheriff did not deliver to the defendant a copy of the complaint or arrest order.   It was imperative that he do so.   As his return apparently was not filed until after the hearing, no opportunity was afforded defendant to object to it, or to contradict it, but if there had been, as will appear later, it is likely that the opportunity would not have been availed of.   This nonobservance of the statute constitutes reversible error.   It is the duty of the county court under section 2 of the act, to designate the time and place for the first meeting of the commission.   At least five days' notice of such time and place shall be given by the clerk of the court or the judge thereof to the person complained of, unless, in an aggravated case, waiver of such notice is made by the guardian ad litem with the permission of the court or the judge therof.   It seems that the guardian ad litem, when notified of his appointment the night before the morning of the day fixed for hearing, of his own volition and without any permission or aproval by the court or judge, waived the five days' notice which the statute required to be given to the defendant.   Conceding for our present purpose that the guardian may waive this notice with the permission of the court or judge, the record does not show that this permission was asked or given.   There is no showing whatever that the case is

an aggravated one. That is not a question which the guardian ad litem may determine for himself. We are of opinion, in this proceeding, where the liberty of the citizen is at stake, the record should show that the court's permission was given and we must not presume that it was, merely because the record is silent. We are also of opinion that giving of this notice is mandatory, unless properly waived, and must be strictly complied with. It was not complied with in this case, and the alleged waiver is not established. Even if this is not a jurisdictional matter, there was a noncompliance with an essential condition of the statute, compliance with which is just as essential as if it was commanded by the Constitution.

Section 4 of the statute provides that the guardian ad litem shall be given at least two days' notice of the first session of the commission. The guardian received notice of his appointment about 8:30 p. m. of the evening of January 31, and then assumed to waive the two day's notice. The giving of it is mandatory and the guardian ad liten is not by the statute given any authority to waive the same. But if he did have such authority, under the facts disclosed by this record it was inexcusable neglect for him to permit or suffer this inquest to be held without objection or without any investigation of the facts which he should have in order properly to represent the defendant. The very purpose of requiring notice to be given to a guardian ad litem is to give him time and opportunity to examine for himself into the facts, and to ascertain what measures he may or should take for the protection and benefit of the one for whom he appears.

Section 10 of the act provides that if the defendant be dissatisfied with the order of the judge or court, in making the commitment pursuant to the report of the commission, he may within five days after the making of such order demand in writing that the questions considered by the commission be tried by a jury. It is too plain for argument that speeding the defendant by train to Denver within a few minutes after the order was entered

deprived her of the right to demand within five days thereafter a jury trial. True, there is some testimony, although unsatisfactory, that the county judge, before the commission began to function, stated to the defendant that she was entitled to a jury trial. The county judge himself has no distinct recollection on the subject. It is not likely that any such statement was made by him at that time, notwithstanding the testimony of a witness that it was made, because the hearing before the commission had not begun, and the commitment order had not then been made, and the defendant was not then entitled to a jury trial, and she could not request it until after the commitment order was made and she then had five days within which to make the demand.

The undisputed facts, and as we have found them to be clearly show that the defendant did not have the kind of a hearing which she is entitled to under the statute. The guardian ad litem did nothing whatever to protect her rights. He attempted to waive them before he had ever seen or conversed with her, or knew her condition. The county judge was permitted, upon this application to have the commitment order and decree set aside, to give his statement not under oath and his recollection of what took place at the hearing before the commission. He frankly stated in effect that in such cases when he had appointed a commission in whom he had confidence, he gave but little, if any, attention to the hearing and usually, as matter of form, and without examination, approved its report. He has no distinct recollection of what took place at the inquest, does not remember whether he advised the defendant of her right to a jury trial, does not know whether or not a copy of the complaint and order of arrest was served upon her. There is nothing in the record that shows any unfairness or prejudice of the trial judge. His mistakes were those of law, and some of his rulings constitute error which any trial court might commit while trying to administer justice.

We cannot suppress the observation, however, that the

unusual expedition exhibited in this investigation by the lunacy commission, the marked lack of advice or assistance by the guardian to the defendant in making her defense, her ignorance as to what the proceeding really was, might well have led to a withholding of the approval order until the defendant had ample opportunity to present her case. When the application to set aside the approval order was presented to the trial court on a showing which was practically uncontradicted that imperative and mandatory provisions of the statute were violated without excuse or justification and to the defendant's prejudice; and that the provision requiring the five days' notice even if it could in a proper case be waived, was improperly waived here, it was the duty of the trial court to set aside the order, and for its refusal to do so its judgment must be reversed, if that can be done on this review.

2. This brings us to a consideration of the objection by the defendant in error that the time had elapsed for suing out a writ of error at the time this one was issued. We have already said that the provisions of the Civil Code are not applicable to this proceeding. Rule 18 of this court requires that a writ of error shall be sued out within one year from the time the judgment sought to be reviewed was rendered. The jurisdiction of the court under this lunacy statute is a continuing one, and all proceedings, judgments and orders thereunder "are of a continuing character, and open to change and modification on application of any party in interest in the court having original jurisdiction". *In re Rainbolt,* 64 Colo. 581, 172 Pac. 1068. We also held in that case, referring to the order reserving jurisdiction, "that other orders (than the approval and commitment orders) might become necessary and accordingly (the trial court) left the proceedings open; and whether the court did so or not, the case at all times would have been open for further action by the court to meet any exigency".

The county court on this application had jurisdiction not only to modify or change the approval and commit-

ment orders, but had jurisdiction to set them aside in their entirety upon a proper showing, at any time and until the defendant in. a lunacy proceeding is properly discharged or until his death. This writ of error was sued out within the proper time. The defendant in error of course admits that Mrs. Hultquist had been previously adjudged a mental incompetent and was still insane at the time this writ of error was sued out and the order so adjudging had not been set aside. Rule 18 expressly provides that in such a case the time of such disability shall be excluded from the computation of the one year period given for the suing out of a writ of error after the rendition of the judgment or order complained of. If this were an ordinary action under the Civil Code, or if the time for suing out a writ of error had elapsed at the time this writ of error was issued on January 24, 1924, the subsequent order in the same proceeding appointing a conservator might not be reviewed. But in this statutory proceeding where jurisdiction is continuing, and a writ of error being directed, as here, to the orders of approval and commitment, they are sufficiently final, according to the Rainbolt case, to authorize a writ of error thereto at any time, till death or discharge of the alleged insane person. Proceedings, judgments and orders therein are of a continuing character. The orders of approval and commitment being open to review at all times after their rendition, all subsequent orders rendered in the proceeding may be reviewed in connection therewith.

It is too clear for discussion that the order appointing the conservator was invalid and should be set aside upon this review, as a mere recital of the facts relating thereto demonstrate. After the county court denied, January 24, 1924, the defendant's application to set aside the approval and commitment orders, she brought an action against one of her sons upon his promissory note to her as payee. In his answer to the complaint in that action this defendant son alleged that, after the defendant was adjudged insane, he himself had secured the appointment of a con-

servator for her estate and he pleaded this order as a bar to the maintenance by the defendant of her action upon the note, the conservator himself being the only party authorized to sue. No notice whatever was given to the defendant or any one in her behalf of this application for appointment of a conservator. Even if the statute had not required notice in such a case the humane principles of the common law would require notice of some kind to be given to her or some one in her behalf before a conservator could be appointed and allowed to take possession of her property and manage the same.

For all these and other reasons which might be mentioned, we are clearly of opinion that the trial court misconceived its authority and was wrong in refusing to set aside the order or decree purporting to declare the defendant an insane person and committing her to the hospital. It is no answer to say that since the proceedings under this lunacy statute are continuing, and that after an order adjudging one insane is made, upon a proper showing in the same proceeding he may be declared restored to reason. No person would consent to rest under a decree that declared him insane if he really believed that he was sane. Though Mrs. Hultquist might, in the same proceeding, apply for an order declaring her restored to sanity, this would not be full redress or compensation to her for what she has suffered, and will continue to suffer, so long as the bar sinister of an unreversed order of insanity stands against her.

We also are constrained to say that it is a remarkable situation that, in the physical and mental suffering to which this woman has been subjected, the husband and some of the children apparently have not manifested any interest to have the wife and mother relieved of the lunacy order. We are at a loss to conceive why they have put obstacles in her way to a restoration of the rights of a sane person, if she is sane; or, if she is insane, why they persistently withhold that care and sympathy they would likely give to a sick animal. They should be quick to give

her every assistance which their relation to her would seem to demand. Normal people sustaining to a woman such a relation as that of husband or child consider this not only a natural but a pleasurable duty. She has been hampered by the withholding of the means of sustenance to which she is entitled out of her own property, and not allowed to manage the same or to have the benefit thereof while resting under what would be considered by some people as a stigma so long as the improper commitment order hangs over her. Without reflecting upon the integrity or motive of the trial court, we have no hesitation in saying, on the face and strength of this record, that a gross injustice has been done to this woman. It is the duty of a court when it can consistently do so in accordance with sound principles of justice, as can be done in this case, to give her the relief to which she is so justly entitled.

Possibly one inference that might be drawn from this record is that for the welfare of the mother who was suffering from goiter and who refused to undergo an operation for fear of its result, this proceeding was instituted in order to have her committed to a hospital where she would be forced to submit to an operation. Another reason might be a desire to deprive her of the control of her own property and preserve it for her. If so, neither motive is a justification. In either case it would be a manifest abuse of judicial process. We are unable to fathom the apparent mystery that pervades this case. There may be family secrets that the husband and children are unwilling to disclose some "skeleton in the closet" they do not wish to exhibit, which, if divulged or brought out, might tend to explain their behavior. If there are any facts that might tend to mitigate or soften their conduct or, in any degree, justify their treatment of the wife and mother, which, unexplained, as is the case here, not only courts but all right-minded people deem reprehensible, they had ample opportunity to produce them. In the present state of the record they must not, and the

representative of the state in this proceeding must not, expect this court to withhold its reprobation.

The approval and commitment orders of February 1, 1923, and the subsequent order appointing a conservator are reversed and set aside and the lower court is instructed to vacate the same and dismiss the proceeding.

MR. CHIEF JUSTICE ALLEN and MR. JUSTICE SHEAFOR concur.