## No. 16,948.

### KENDALL *v.* THE PEOPLE.
(252 P. [2d] 91)

Decided December 22, 1952.

Mr. JOHN W. ELWELL, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. H. LAW-RENCE HINKLEY, Deputy, Mr. FRANK A. WACHOB, Assistant, for the people.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

PLAINTIFF in error was respondent in a lunacy proceeding instituted in the county court of the City and County of Denver on the 10th day of January, 1950, by which he was adjudged insane, and on January 30, 1950 was committed to the Colorado State Hospital at Pueblo. Alleging that the county court of the City and County of Denver was without jurisdiction in the premises and that his committment was therefore illegal and void, counsel for respondent filed a petition on May 15, 1952 in said court, seeking revocation of the committment order; a dismissal of the lunacy proceeding; and that he be discharged from the hospital. The jurisdiction of the county court being continuous in proceedings under the lunacy statute, and any judgment or orders entered therein being open to change and modification on application of any party in interest, the filing of this petition was orderly. On hearing, the present judge of the county court denied the petition on August 7, 1952, and we are asked to review the proceedings on the ground that respondent was at all times a resident of Montezuma county, Colorado; without an established residence in the City and County of Denver; and that the report of the lunacy commission was ambiguous and contradictory.

The Attorney General, appearing on behalf of the people, defendant in error, has very commendably confessed error; by a lengthy and well-reasoned brief joined with plaintiff in error seeking a reversal of the judgment; and more particularly, is desirous of ending the practice of shifting such cases from outlying counties to the Denver and Pueblo county courts for disposition without jurisdiction, for the protection of the individual involved as well as the interests of the state.

The files in the case disclose the following factual situation:

Respondent established his residence in Montezuma county during the year 1944, when he purchased a twenty-acre tract of land therein, on which he made his home with his mother. Immediately prior to November 2, 1949, when he was about forty-one years of age, and under the delusion that he had been sent to earth to personify "truth and light on earth," and "that my communications with the etherian or spiritual world are far above what is known as spiritualism," he had written many letters to the President of the United States and to Joseph Stalin. There being no copies of such letters before us, we assume that there was a violation of the postal regulations, since the federal secret service department at Denver, Colorado, caused his arrest in Montezuma county and he was transported to Denver by the federal officials and placed in the Denver county jail about November 2, 1949. For undisclosed reasons, a federal court order was obtained on November 29, 1949, for hospitalization at the Federal Correctional Institution, near Englewood, Colorado, for observation and examination. He remained there until December 15th, when, upon his discharge, he was returned to the Denver county jail. The report of the physician at the correctional institution, which gives an historical, physical and mental background, concludes with the statement that it is obvious that respondent is a fanatic, laboring under a system of delusions, and that he is insane.

Upon receipt of this report the United States District Attorney communicated with the judge of the county court of Montezuma county requesting, in substance, permission to file lunacy proceedings in the City and County of Denver. In reply the judge of the county court of Montezuma county stated, "We are quite willing that the examination as to the mental condition of Mr. Kendall be held in the City and County of Denver at the expense of Montezuma county." He further stated that this has been done on other occasions in a satisfactory manner and at a saving to Montezuma county in the cost of transportation and other unnecessary expenses. Upon receipt of this letter a letter was obtained from the attorney for the City and County of Denver requesting the clerk of the Denver county court to permit the filing of the complaint in lunacy against respondent. The complaint was filed as hereinbefore stated, in which it was alleged that respondent was "a resident at county jail in the City and County of Denver," and it was complained that respondent is, (1) so insane or distracted in his mind as to endanger his own person or property, or the person or property of another, or others, if allowed to go at large; (2) and is, by reason of old age, disease, weakness of mind, feebleness of mind or schizophrenia, incapable, unassisted, to properly manage and take care of himself or his property, and therefore would be likely to be deceived or imposed upon by artful or designing persons; and it was prayed that inquiry be had as provided by law. This complaint apparently is in the customary form used in such cases; covers all of the statutory disabilities and informities; and no doubt was designed by one complaint to cover all phases of insanity or mental incompetence.

▇ A commission and guardian ad litem were regularly appointed upon the filing of the complaint; a hearing had; and the commission answered all three of the statutory questions in the affirmative, which presents a contradictory situation so far as respondent is concerned,

namely, if the respondent is not dangerously insane, but by reason of old age and feebleness of mind is incapable, unassisted, to care for himself and his property, it is the duty of the court to allow respondent to be at large in the custody of a relative or friend; if the respondent is a mental defective, the court is without choice in the matter and is required to send him to the home for mental defectives provided by the state; if respondent is insane, then the findings as to old age and mental defectiveness are uncalled for and confusing. If respondent is incapacitated by old age or is a mental defective, then a finding of insanity is out of place. A finding by the commission should be for the protection of the respondent as well as society, specific, and not be an all-inclusive finding that could leave its stigma upon respondent throughout life. The respondent is entitled to have the commission, presumably competent, make a specific finding instead of a blanket finding and report covering all phases of the lunacy statute. It is true a proceeding under the lunacy statute is not a criminal action; still, an adverse finding in lunacy bears grave consequences in that the person is denied his liberty and incapacitated to contract, and while it does not necessarily bring his name or reputation into disrepute, it is, nevertheless, a blot on his life and those he might have brought into being. We are not hesitant in disapproving any verdict in a criminal case that is uncertain or ambiguous.

■■ The provisions of our lunacy statute, being in derogation of the common law, are to be scrupulously adhered to. The jurisdiction of county courts, extended in such cases by our statute, is clearly set out, and it is abhorrent to justice and society to deviate therefrom. It unquestionably appears from the record that respondent in this case was, and is, a resident of Montezuma county. The place of residence determines the venue and jurisdiction of the court. The fact that the petition herein stated the respondent to be "a resident at the county jail" should put the court on inquiry in the absence of

any other showing. A respondent, as here, could be in the county jail under duress by being brought from another county, would not thereby gain or lose a residence, and, in fact, the finding and report of the commission show, "present place of residence, Cortez, Montezuma county, Colorado." This finding alone deprived the trial court of jurisdiction because the respondent was "not found in Denver county" as is provided under some circumstances, that is, where a demented person is at large and apparently dangerous to himself and society. Any inquiry would have disclosed that respondent was arrested in the county of his residence and removed to Denver county. The record further shows that the proceedings were instituted by the permission of the county court of Montezuma county and respondent was never voluntarily in Denver. While it may be said that the determination of facts concerning the residence by the Denver county court is conclusive, it can safely be stated that in this case there was no determination of facts by the county court on this question, because, in the absence of testimony, the files belie any determination that might have been made to the effect that respondent was a resident of Denver county.

■ ■ While our statute, section 3, chapter 105, '35 C.S.A., provides, inter alia: "Whenever any reputable person shall file with any county court * * * a duly verified complaint, alleging that any person in said county is so insane or distracted in his mind * * *," this court said in *Isham v. Miller, Sheriff*, 80 Colo. 380, 252 Pac. 353, "We think he is in the county who is either a resident or actually found and taken into custody therein." This statement was made after consideration of the question of jurisdiction of the county court of Adams county, where a respondent, while insane, had departed from the county where he resided. It may seem repetitious to again say that respondent in the instant case was clearly a resident of Montezuma county and was not "found and taken into custody" in Denver county; and on the face

of the record in the case, the Denver county court unlawfully assumed jurisdiction.

There is nothing in the record, and nothing is herein said that may be interpreted as indicating any unfairness or prejudice on the part of either of the two Denver county judges or the county judge of Montezuma county. Their mistakes were mistakes of law, and it is apparent that their rulings were such as might easily be made in an attempt to administer justice through what is apparently an *easy* practice or custom surrounding the handling of lunacy matters from one county to another as economy and convenience might appear. This practice could result in lamentable conditions in many cases. It is said that lunatics and mental incompetents are "dumped" into the psychopathic hospital at Denver and the Colorado State Hospital at Pueblo by outside counties, or the friends and relatives of incompetent persons, with the subsequent request from the committing agent or agency to save the county of residence further expense by filing the complaint in lunacy in either Denver or Pueblo as the case may be, and committment there follows. It will readily be seen that a respondent is thus tried in a strange court away from his home surroundings, and usually without anything more than profunctory legal representation. All of this without any effort to ascertain his ownership of property, and it follows that many times no conservator is appointed by the committing court; the respondent is lost to society; and he may be deprived of any property he may have, or his property dissipated by designing relatives or friends.

█ We find in a copy of the letter from the judge of the county court of Montezuma county, a statement of respondent's property in that county. This was wholly ignored by both the commission and the committing court, because we find in the report of the commission that "said person has no estate out of which his care and maintenance can be made." During the period of respondent's detention in the State Hospital, many things

could have happened to his property which was either overlooked or ignored by the court and the commission. If his property has been lost to him, then the thing has happened which the statute was designed to prevent, that is, to protect the insane person from himself and from designing persons. *Isham v. Miller, supra.* Counsel for respondent, as well as counsel for the people, has, with apology, gone outside the record to mention numerous cases where unbelievable things had happened to an unfortunate respondent under this deplorable practice, and in some instances where all liability for support or maintenance of the unfortunate respondent is effectively lost and designing persons through questionable means have been able to acquire his estate. Ordinary sense of justice and decency compels us to condemn such practice and look upon it with critical disapproval.

We conclude that respondent was clearly shown to be a resident of Montezuma county; was never "found" in the City and County of Denver, as contemplated by the statute; that the county court of the City and County of Denver never had jurisdiction in the matter; and that the petition for revocation of the order of committment and dismissal of the lunacy proceedings should have been sustained. The cause is remanded to the trial court with instructions to quash the order of committment, dismiss the entire lunacy proceedings, and direct the immediate discharge of respondent from the State Hospital at Pueblo.