No. 18,989.

BERNICE A. YOUNG *v.* DAVID BROFMAN,
County Judge, et al.
(338 P. [2d] 286)

Decided April 21, 1959.   Rehearing denied May 11, 1959.

Messrs. BROMLEY & KINGSLEY, Messrs. CRISTIANO & BUGDANOWITZ, for complainants.

Messrs. SHELDON & NORDMARK, for defendants.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

THIS is a petition in prohibition. It alleges in substance that the County Court of Denver is proceeding without jurisdiction with respect to the appointment of a conservator, the denial of a jury trial to the ward in incompetency proceedings, and in authorizing annulment proceedings to be instituted in the district court. It is also claimed that the District Court of Denver is outside its jurisdiction in entertaining an annulment suit. The petitioner here is alleged to be the wife of the mental incompetent. The respondent is the conservator named by the county court.

In question herein is the status of an 86 year old man, one Hope W. Young. Respondents maintain that he is incompetent and was incompetent on July 23, 1958, the date that the marriage to petitioner was "celebrated." The validity of the marriage has been questioned by the Colorado National Bank, Conservator.

On December 31, 1958, a petition in insanity was filed in the County Court of Denver, and on that same day, following a hearing, a commission and a guardian ad litem were appointed. On January 6, 1959, the commission met and determined that Young was mentally incompetent, reported to the Court, and on the same day, he was so adjudicated. On January 7, 1959, the Colorado National Bank was appointed Conservator.

A jury trial on the issue of incompetence was requested by the petitioner within the five days provided

by statute, and the petitioner moved to vacate the order appointing the Conservator. The county court denied the motion and granted respondent's motion to strike the demand for jury trial. This latter was based on the conclusion that the request for a jury was not in the best interests of the ward, but was for the purposes of the petitioner. The county judge noted that the petitioner was shown to have in her possession property of the ward in excess of $100,000.00.

We are called upon to determine the following questions:

I. Whether following an adjudication of insanity it is within the power of the county court to determine that a request for a jury trial is not in the best interests of the ward and to strike the request from the record.

II. Whether it is within the power of the county court to appoint a conservator following an insanity adjudication notwithstanding a jury trial has been requested within the time required by statute.

III. Whether the conservator can be empowered to commence annulment proceedings notwithstanding a demand for jury trial has been filed.

I. *Validity of the order striking the request for jury trial.*

The applicable statute is C.R.S. '53, 71-1-13 (1957 Cum. Supp.). This section reads as follows:

"*Review.* — Any respondent or his attorneys, his guardian ad litem, his legal guardian, parent, spouse, or adult next of kin may, within five days after the entry of the order of adjudication or commitment, file a demand in writing with the court having jurisdiction that the questions considered by the medical commission be tried by a judge or by a jury in such court. If the respondent requests a trial by jury, the court shall, within one month, cause a jury of six persons to be summoned, and the trial shall be had as provided by law for the trial of civil causes before a jury. The findings of the medical commission shall be admissible as evidence upon the

identification thereof by the person, or persons, verifying the report of the commission, and such person, or persons, shall be subject to examination and cross-examination as a witness in other civil causes. The jury shall be instructed by the court that the findings of the medical commission may be overcome by a preponderance of the evidence. The verdict of the jury shall be in answer to the questions set forth in section 71-1-7 (2). The judge shall enter a decree in accordance with the finding of the jury, either entering an order of commitment if any question shall be answered in the affirmative, or discharging the respondent if all questions are answered in the negative; provided, when, in the opinion of the court, said finding by the jury is contrary to the law or the evidence of the case, the court may set aside the finding and enter an order notwithstanding the finding of the jury. Pending such trial the court may make such order as it may consider proper in the premises relating to the custody and care of the respondent."

█ It will be recalled that in the case at bar, the petitioner, as spouse, requested the review by jury in accordance with the above section. The county court refused to honor this request and struck it from the record on the ground that the petitioner was acting adversely to the interests of the ward. No doubt the court reasoned that since it may, under 71-1-13 (1957 Cum. Supp.), set a verdict aside which is contrary to the law, it may also in a proper case dispense with a jury trial. Respondent argues that the court's action was valid because of the ambiguity of the statutory provision that a respondent, his attorney, his guardian ad litem, parent, spouse or adult next of kin may make the demand. It then declares that "if the respondent" makes the request the court shall impanel a jury. It is argued that if someone other than the respondent makes the request the court has a discretion concerning the impaneling of the jury and, therefore, the county court could in a proper case refuse to impanel a jury. However, we are

unable to agree with this construction of the statute. We do not believe that the court can, once a request has been made, determine whether the case is a proper one for a jury trial or whether it is in the best interests of the ward to impanel a jury. Our interpretation of the statute is that the words "if the respondent requests" means if the respondent or some one of the persons named requests the same in his behalf. Thus, the court has no discretion in the matter, but must impanel a jury. The strained construction requested would render the statute meaningless.

This Court has had occasion to consider similar problems on numerous occasions and the holdings have been that the statutes must be carried out strictly in accordance with their provisions. Thus, in the relatively recent case of *Barber v. People,* 127 Colo. 90, 254 P. (2d) 431, it was held that all of the proceedings were void by reason of the fact that the Sheriff had changed the place of confinement by inter-lineation. The Court pointed out that every person, including those suspected of being insane, has certain fundamental constitutional rights and then continued:

"Respondent is restrained of her liberty in the instant case solely under the authority of the special statutory proceedings set forth in chapter 105, '35 C.S.A. Such proceedings must of course conform to the constitutional limitations upon the exercise of power contained in the Constitution of Colorado and that of the United States. While it is argued that in the instant case these constitutional limitations were violated in several ways, it is not necessary for us to pass upon those questions. It is sufficient for determination of this case to rely upon the well-established rule that, in an action which is entirely statutory, the procedure therein prescribed is the measure of the power of the tribunal to which jurisdiction of causes arising under the statute is given. There must be a strict compliance with the provisions of such a statute, which are mandatory, and in the absence of such

compliance the court has no jurisdiction to act. This rule is especially applicable to a statutory proceeding, the object of which is to deprive a person of his liberty." 127 Colo. 95.

The same view is expressed in *Hultquist v. People,* 77 Colo. 310, 236 Pac. 995, and *Okerberg v. People,* 119 Colo. 529, 205 P. (2d) 224. In the *Hultquist case* there was a failure to observe the requirement of the statute that a notice be given to the alleged insane person at least five days before the hearing before the commission. The Court said:

" * * * We are also of opinion that giving of this notice is mandatory, unless properly waived, and must be strictly complied with. * * * "

The Court then condemned the "unusual expedition" exhibited by the lunacy commission. At p. 315 it was said:

"We think the evidence makes it clear that the sheriff did not deliver to the defendant a copy of the complaint or arrest order. It was imperative that he do so. As his return apparently was not filed until after the hearing, no opportunity was afforded defendant to object to it, or to contradict it, but if there had been, as will appear later, it is likely that the opportunity would not have been availed of. This nonobservance of the statute constitutes reversible error. * * * "

In *Okerberg v. People,* supra, the same question was presented and the pronouncement was again made that the requirements of the statute are mandatory. This was reiterated in *Rickey v. People,* 129 Colo. 174, 267 P. (2d) 1021.

Having expressed our view that the county court is required to honor the request which is made by a spouse, we now turn to whether this is changed where the contention is then being made that the marriage itself is subject to annulment. In other words, should the county court suspend the jury trial pending the outcome of an annulment action in the district court with a

view to finally setting aside the request *if* the district court concludes that the marriage should be annulled and that it was void *ab initio*. To so rule would seriously impair the right to a jury trial and while the facts of the present case might be such as to produce an equitable result if this view of the statute were accepted, we hesitate to give our sanction to a principle which will permanently undermine the provision of the statute authorizing the jury trial. We conclude, therefore, that it is the status as of the time of the request which is determinative. The Court should not anticipate or await the outcome of the annulment suit because this would serve to nullify the jury demand also — in view of the 30-day limitation on holding the hearing.

II. *Validity of the Appointment of the Conservator.*

The contention of the petitioner is that the county court lacked jurisdiction to appoint a conservator prior to the adjudication by the jury. Counsel argue that the entry of an order following the report of the medical commission as to the sanity of the respondent is not an adjudication which authorized the appointment of a conservator. We are unable to agree with this position. The applicable provision of the statute, 152-9-2 (1957 Cum. Supp.), reads:

"*Conservator — when appointed.* — (1) Whenever it shall appear to the county court that a person has been adjudicated mentally ill or mentally deficient, and is a resident of the county or has property within such county which must be conserved, and has no conservator appointed by any county court within this state, said court shall appoint some fit person as conservator of the estate of said mentally ill or mentally deficient person."

When is a person "adjudicated"? The section of the statute pertaining to adjudication, commitment and custody is C.R.S. '53, 71-1-11 (1957 Cum. Supp.), and this provides in pertinent part:

"*Adjudication, commitment, and custody.* — (1) If the report of the medical commission finds that the respond-

ent is mentally ill or mentally deficient, the court shall, within six days after the return of said report, enter an order adjudicating the respondent mentally ill or mentally deficient. The court shall include in such order provisions for the commitment or custody of the respondent."

The use of the term "adjudicating" indicates that a jury verdict is not an essential requisite of adjudication within the meaning of 152-9-2, supra. To be sure, this initial adjudication is an interlocutory one where a jury trial has been requested. However, the statute relative to appointment of conservators does not require that the person shall have been *finally* "adjudicated mentally ill" by a jury as a condition precedent to the appointment of a conservator. Therefore, we are of the opinion that the county court acted within the powers granted to it by statute when it appointed the conservator herein prior to impaneling a jury. Acceptance of the petitioner's contention could mean delay in the appointment of a conservator and could result in loss of property. The statute does not tie the hands of the county court in this manner.

Our attention has been directed to a number of cases, but there is only one which deals with the exact point and that is a decision of the Court of Appeals in *Jones v. Learned*, 17 Colo. App. 76, 66 P. 1071, and the Court stated:

"The absence of a verdict of insanity was also fatal to the judgments."

The opinion in the *Jones case* discloses that the proceeding there arose under statutes which were in effect in 1883 and the reference is to 2 Mills Ann. Statutes, Sec. 2935. An examination of that statute discloses that under its provisions the county court was powerless to adjudicate a person insane or to make any other orders with respect thereto until a jury of six had declared the individual as "so insane or distracted in mind as to be incapable and unfit to care for and manage his or her

estate." Thus neither *Jones v. Learned* nor the other decisions cited are authoritative on the present subject and we must conclude that the quoted statutes authorize the action which was taken.

III. *Validity of the Order Authorizing the Conservator to Institute an Annulment Suit.*

■ The present contention that the court was powerless to authorize the conservator to proceed with a suit in annulment is largely based upon the petitioner's argument that the refusal of the county court to grant a jury trial had the effect of voiding all of the subsequent proceedings. Apart from this problem there seems to be little question but that the county court has authority to authorize an annulment suit at the request of the conservator. Sections 152-10-13 and 152-10-27 contemplate the filing of suits by a conservator on behalf of its ward. *Cox v. Armstrong,* 122 Colo. 227, 221 P. (2d) 371, holds that an annulment suit may be instituted by the conservator on behalf of the ward.

It has been represented to the Court that this matter is one of urgency which should be expedited, and we agree that it should be. The annulment proceedings should be pursued with dispatch and the same is true of the jury trial (to determine sanity) in the county court.

Petitioner has urged us to declare that *all* of the proceedings in both the county and district courts were absolutely void. We do not agree that the county court's refusal to grant a jury trial tainted all of the proceedings. It is still possible to impanel a jury and litigate the merits in the county and district courts and it is our view that these hearings should be pursued without delay.

The rule to show cause with respect to the request for jury trial is made absolute and it is directed that a jury be forthwith impanelled and a review be had as provided by statute. The rule to show cause directed to the district court is discharged and the rule to show cause al-

leging that the court lacked jurisdiction to appoint a conservator is likewise discharged.

MR. JUSTICE SUTTON and MR. JUSTICE FRANTZ not participating.