No. 19,063.

Fred J. Sabon *v.* People of the State of Colorado.

(350 P. [2d] 576)

Decided April 4, 1960.

Mr. Isaac Mellman, Mr. Gerald N. Mellman, Mr. Bernard H. Thorn, for plaintiff in error.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank

E. Hickey, Deputy, Mr. John E. Bush, Assistant, for defendant in error.

*In Department.*

Opinion by Mr. Justice Day.

Adjudication of mental illness by a jury in the county court, resulting in commitment of Fred J. Sabon to the Colorado State Hospital at Pueblo, is the judgment sought to be reversed by this writ of error.

In preliminary proceedings instituted as a result of a complaint by Sabon's wife, a medical commission, appointed according to the statute, made findings that Sabon was mentally ill. He thereupon demanded jury trial as provided in C.R.S. '53, 71-1-13 (Cum. Supp. 1957), and it is to alleged errors in that trial that our attention is directed.

The only points in the summary of argument of plaintiff in error which we deem necessary to discuss are:

1. That the court erred in giving its Instruction No. 2 to the jury.

2. That the court erred in permitting Sabon's wife to testify in the proceedings after objection had been made on the grounds of privilege.

## FIRST QUESTION TO BE DETERMINED

*In attempting to instruct the jury as provided in C.R.S. '53, 71-1-13 (Cum. Supp. 1957) did the court commit error?*

This question is answered in the affirmative.

The portion of the statute concerned in the first question upon which the erroneous instruction was predicated reads as follows:

" * * * The findings of the medical commission shall be admissible as evidence upon the identification thereof by the person or persons, verifying the report of the commission, and such person, or persons, shall be subject to examination and cross-examination as a witness in

other civil causes. The jury shall be instructed by the court that the findings of the medical commission may be overcome by a preponderance of the evidence. * * * "

Instruction No. 2 given by the court reads:

"The Court instructs you that the Colorado Statutes provide that the Medical Commission's report of January 5, 1959, *can only* be overcome by a preponderance of evidence, but also that the City must prove by a preponderance of all of the evidence in the case that Fred John Sabon is mentally ill." (Emphasis supplied.)

 The instruction as given by the court was contradictory, is not a clear statement of the law involved, and unduly restricts Sabon in challenging the findings of the medical commission. It places upon him the burden of overcoming the commission's report by a preponderance of the evidence, and at the same time asserts that the city must prove his mental illness by a preponderance of all the evidence. The two cannot be reconciled. The statute provides that the jury trial should be conducted as are other civil cases. Therefore, the burden is upon the city to establish the mental illness of Sabon by a preponderance of the evidence. The burden of proof cannot be shifted. *American Insurance Company v. Naylor,* 101 Colo. 34, 70 P. (2d) 349. We do not construe the statute as requiring the respondent to produce any evidence whatsoever. The phrase in the statute reading "the findings of the medical commission may be overcome by a preponderance of the evidence" is redundant and is merely a reiteration of a fundamental proposition of law which exists without the aid of the statute. The instruction, however, by using the words "can only" was so restrictive that it told the jury the respondent Sabon was limited to overcoming the findings of the medical commission by evidence sufficient to outweigh the findings in the commission's report. Thus the instruction gives no recognition to the fact that affirmative evidence is not the only way in which a report such as this medical report can be overcome. The re-

spondent might overcome it by showing it to be questionable or unreliable or predicated upon incompetent evidence or false statements. He might overcome it by demonstrating it to be the result of error or prejudice. Cross examination of the persons who participated in the preliminary medical hearing might elicit admissions or might reveal conduct that would entirely discredit the report. The respondent would, therefore, not be required to produce any evidence or call any witnesses on his own behalf. Because he did not offer any evidence, the effect of the instruction was to make the report conclusive.

We hold, therefore, that the instruction, in substituting "can only" for "may," was not in the language of the statute, and being unduly restrictive, was erroneous.

SECOND QUESTION TO BE DETERMINED

*Was it a violation of the respondent's rights to permit the wife to testify in the proceedings?*

This question is answered in the negative.

The pertinent statute (C.R.S. '53, 153-1-7) relied upon by Sabon reads:

"A husband shall not be examined for or against his wife without her consent, nor a wife for or against her husband without his consent; nor during the marriage or afterward shall either be examined without the consent of the other as to any communications made by one to the other during the marriage; but this exception does not apply to a civil action or proceeding by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other."

The action in the county court can best be described as a *special statutory proceeding,* and is neither a criminal case nor a civil action. *Kendall v. People,* 126 Colo. 573, 252 P. (2d) 91; *Hultquist v. People,* 77 Colo. 310, 236 Pac. 995.

█ It is in no sense an adversary proceeding, and we do not deem the privilege statute to have any application to the inquiry into the mental health of the re-

spondent. The testimony of the wife was neither *for* nor *against* her husband. The only matters testified to by the wife were as to threats made by him to her and his conduct toward her. The purpose of the testimony was to show the mental condition of the husband as illustrated by his acts. On a similar question involving privileged communication between attorney and client, this court commented in *Hawkyard v. People,* 115 Colo. 35, 169 P. (2d) 178:

"Next, it is contended that the evidence of the attorney who had had charge of defendant's business consisted of privileged communications under the provisions of section 9, chapter 177, '35 C.S.A., and its admission, therefore, was prejudicial to the rights of defendant. We are not confronted with a situation where either defendant or his guardian ad litem objected to the attorney's testimony or objected to his testifying because of a confidential relationship. We might dispose of this contention by the statement that in the absence of an objection the consent of defendant was waived, *but we do not believe that in a lunacy inquisition, which is a statutory proceeding by the state for the protection of an unfortunate individual and his property, the statute has any application.* A lunacy inquisition is not instituted for the purpose of punishing a mental incompetent or to deprive him of any property rights, but is a proceeding to protect him from the impositions of unscrupulous persons and to conserve his property for his use and benefit. It is in no sense adversary, and an attorney who has had charge of his legal business may be in much better position than any other person to give evidence as to the unfortunate person's inability to properly manage his affairs. * * * " (Emphasis supplied.)

An Iowa case more directly in point on the application of the privilege between husband and wife in a mental health proceedings is consistent with the ruling in the Hawkyard case. *In Re Fleming,* 196 Ia. 639, 195 N.W. 242. Therein we find the following comment:

"In his brief points, appellant says that the trial court erred in permitting the wife of the defendant, who is one of the plaintiffs, to testify over objection, to her observations of her husband and his health. * * *

"As to the testimony of the wife, the cases cited by appellant are criminal cases. The instant case is in no sense a criminal case. It is a special action for the benefit of the defendant.

" * * * The trial court seems to have carefully guarded this matter, and did not permit her to testify to any communications which were of a confidential nature. The trial court held that no communication made to the wife by appellant when no one was present, should be admitted. * * *."

It seems clear that the statute in question is not applicable to a mental health proceeding, and it cannot be said that the wife was testifying against the husband as prohibited by the statute. The testimony of the wife also did not involve confidential communication between the two. A clear statement of the rule is to be found in 97 C.J.S. §269c, p. 771, as follows:

"The rule as to privileged communications does not preclude evidence by one spouse as to a personal injury or violence inflicted on him or her by the other, or as to ill-treatment to which he or she was subjected by the other spouse. * * * "

Proceedings under the Colorado statute are by law to be designated as: "In the interest of ......................, Respondent." The purpose of the inquiry is to determine whether the respondent is so ill in his mind that he lacks a sufficient control, judgment or discretion to manage his affairs, or that he is so mentally impaired that his own welfare and safety of others is in danger and that he requires protection, supervision, guidance, training, control or care. Since the one most likely to be interested in providing this care and protection, and the one most likely to know of the mental illness when the symptoms appear, is the spouse, it would be a strained

interpretation of the rule of privilege to preclude the wife from giving evidence in such a proceeding.

Although not mentioned in the brief of plaintiff in error, we note that the court failed to instruct the jury with reference to the testimony and opinion evidence of experts — the psychiatrists. Even though the parties were remiss in their duty to assist the court in this regard and did not tender any instruction on expert testimony, we deem it incumbent upon the court to give such instruction, less the jury conclude such testimony to be conclusive and binding on them. A familiar instruction, omitted by the court and which we deem apropos in proceedings of this kind, is as follows:

You have heard the testimony of a witness who has given evidence and testified as an expert, giving opinions. This class of testimony is proper and competent concerning matters involving special knowledge or skill, or experience upon some subject which is not within the realm of the ordinary experience of mankind and which requires special research and study to understand. The law allows those skilled in that special branch to express opinions and upon a hypothetical state of facts stated to them to say whether or not, according to their experience and research, a fact may or may not exist. But nevertheless, while their opinions are allowed to be given, it is entirely within the province of the jury to say what weight shall be given to them. The jurors are not bound by the testimony of the experts; his testimony is to be canvassed as that of any other witness; just as far as his testimony appeals to your judgment, convincing you of its truth, you should adopt it; but the mere fact that the witness is called as an expert and gave opinions upon a particular point, does not necessarily obligate the jury to accept his opinion as to what the facts are in the face of the testimony of witnesses claiming to have actual knowledge of the facts.

Because of the erroneous instruction, the judgment is reversed and the cause remanded for a new trial if the

present condition of respondent warrants further proceedings.

Mr. Justice Knauss and Mr. Justice Hall concur.