189 P.3d 1090

**In re MH 2007–000937.**

**No. 1 CA–MH 07–0017.**

Court of Appeals of Arizona, Division 1, Department C.

May 6, 2008.

---

**3.** The court's reference to the necessity of an affidavit was in the context of its discussion of gross negligence.

James J. Haas, Maricopa County Public Defender, By Edith M. Lucero, Deputy Public Defender, Phoenix, Attorneys for Appellant.

Andrew P. Thomas, Maricopa County Attorney By Anne C. Longo, Deputy County Attorney, Andrea L. Cummings, Deputy County Attorney, Phoenix, Attorneys for Appellee.

## OPINION

TIMMER, P.J.

¶ 1 We are asked to decide whether the anti-marital fact privilege, Arizona Revised Statutes ("A.R.S.") section 12–2231 (2003), applies in court-ordered treatment proceedings initiated pursuant to A.R.S. § 36–533 (2003). For the reasons that follow, we conclude the privilege applies and, because no exceptions to the privilege exist on the record before us, the trial court erred by permitting appellant K.M.'s husband to testify over her objection at a hearing conducted on a petition for court-ordered treatment of K.M. Because the error was not harmless, we reverse and remand for additional proceedings.

## BACKGROUND

¶ 2 Prior to May 28, 2007, K.M. had been diagnosed with a mental disorder and had participated in two court-ordered treatments. After ending her second treatment, K.M. refused to participate in further recommended psychiatric treatment and eventually exhibited unsafe and bizarre behaviors, which left her family feeling threatened. Consequently, on May 28, K.M.'s husband, E.M., filed with a health care screening agency an application for involuntary evaluation pursuant to A.R.S. § 36–520.

¶ 3 On May 31, after the agency had screened the application, see A.R.S. § 36–521, Dr. Shakuntala Jain filed a petition for court-ordered evaluation of K.M. pursuant to A.R.S. § 36–523. The court granted the petition and K.M. was admitted to a hospital for evaluation. Thereafter, on June 6, Dr. Thomas Cyriac, Deputy Medical Director of the screening agency, filed a petition for court-ordered treatment, opining in an attached affidavit that based on his examination of K.M., she was a danger to others, a danger to herself, and persistently or acutely disabled. Dr. Christina Gesmundo, who had also examined K.M., submitted an affidavit with the petition reciting similar opinions. Both physicians concluded K.M. was in need of court-ordered inpatient treatment.

¶ 4 On June 14, the trial court held a hearing on the petition. Pursuant to A.R.S. § 36–539(B), two witnesses acquainted with K.M. were required to testify in addition to the two examining physicians.[1] E.M. and S.M., the couple's adult son, served as these acquaintance witnesses. K.M. objected to E.M.'s testimony based on the anti-marital fact and marital communication privileges. The court overruled the objection based on the anti-marital fact privilege but sustained the objection based on the marital communication privilege. Thereafter, E.M. testified about his observations of K.M.'s behavior.

¶ 5 At the close of evidence, the trial court ruled that K.M. was persistently or acutely disabled and needed treatment as a result of

---

1. The parties stipulated to submission of the affidavits of Drs. Cyriac and Gesmundo in lieu of live, direct testimony. Dr. Cyriac, however, was called to testify by K.M. and was cross-examined by her.

a mental disorder. Therefore, the court ordered involuntary treatment for K.M. not to exceed one year, including an inpatient program not to exceed 180 days. This timely appeal followed.

## DISCUSSION

¶ 6 The sole issue on appeal is whether the trial court erred by permitting E.M. to testify at the hearing after K.M. invoked the anti-marital fact privilege. Whether this privilege applies in a mental health proceeding is a question of law, which we review de novo. *Ariz. Dept. of Revenue v. Care Computer Sys., Inc.,* 197 Ariz. 414, 415 ¶¶ 1, 4 P.3d 469, 470 (App.2000); *Ulibarri v. Superior Court,* 184 Ariz. 382, 384, 909 P.2d 449, 451 (App.1995). Similarly, we review the trial court's statutory construction de novo. *Taylor v. Cruikshank,* 214 Ariz. 40, 43, ¶ 10, 148 P.3d 84, 87 (App.2006).

¶ 7 Arizona recognizes two marital privileges: the anti-marital fact privilege and the marital communications privilege. The anti-marital fact privilege is codified by A.R.S. § 12–2231, which provides as follows: "In a civil action a husband shall not be examined for or against his wife without her consent, nor a wife for or against her husband without his consent, except as provided in paragraphs 1 through 4 of § 12–2232." The exceptions provided in § 12–2232, which sets forth the marital communications privilege, apply in the following circumstances:

1. In an action for divorce or a civil action by one against the other.

2. In a criminal action or proceeding as provided in the criminal code.

3. In an action brought by the husband or wife against another person for the alienation of the affections of either.

4. In an action for damages against another person for adultery committed by either husband or wife.

Absent an exception, the anti-marital fact privilege allows a party to prevent his or her spouse from testifying in a court proceeding that takes place during the marriage. *Bla-*

zek v. Superior Court, 177 Ariz. 535, 538, 869 P.2d 509, 512 (App.1994).[2] In contrast, the marital communication privilege, A.R.S. § 12–2232, prevents a spouse "during the marriage or afterward, without the consent of the other, [from being] examined as to any communications made by one to the other during the marriage." In sum, the anti-marital fact privilege only exists during the marriage but is a complete bar to a spouse testifying if the other objects, while the marital communications privilege applies both during the marriage and afterward, barring disclosure of confidential communications only. *Id.*

### I.

¶ 8 Appellee screening agency argues the trial court properly rejected K.M.'s invocation of the anti-marital fact privilege, contending the privilege does not apply in proceedings to obtain court-ordered mental health treatment. According to Appellee, such proceedings are non-adversarial, and therefore a spouse can neither testify "for or against" the other, as required to invoke the privilege under § 12–2231. As sole authority for this contention, Appellee relies on *Sabon v. People,* 142 Colo. 323, 350 P.2d 576, 578 (1960), which held that Colorado's anti-marital fact privilege did not apply in a proceeding to determine the mental health condition of one spouse. The court reasoned that the proceeding was neither civil nor criminal in nature but instead was a non-adversarial, statutory proceeding. *Id.* Thus, according to the court, the wife neither testified for nor against her husband merely by describing his conduct, and the privilege did not apply. *Id.*

¶ 9 We decline to follow *Sabon* for multiple reasons. First, in Arizona, mental health proceedings are adversarial. Arizona affords the proposed patient the full panoply of due process rights as court-ordered treatment would deprive that person of liberty. *In re MH 2006–000749,* 214 Ariz. 318, 321, ¶ 14, 152 P.3d 1201, 1204 (App.2007). Accordingly, the proposed patient is given counsel and a hearing at which evidence is intro-

---

**2.** The accepted rationale for the privilege, which has been criticized, is that allowing one spouse to prevent the other from testifying maintains

family harmony. Joseph M. Livermore, Robert Bartels & Anne Holt Hameroff, 1 *Arizona Practice: Law of Evidence* § 501.2 (4th ed.2000).

duced and arguments are made by opposing parties in favor of and against treatment. A.R.S. § 36–536(A) (providing right to appointed counsel); A.R.S. § 36–539 (setting forth procedures to follow in conduct of contested evidentiary hearing); *In re MH 2006–000749*, 214 Ariz. at 321, ¶ 14, 152 P.3d at 1204 (citation omitted) (recognizing that proposed patient entitled to "full and fair adversary hearing").

¶ 10 Second, because the legislature did not list mental health proceedings among the exceptions to application of the privilege, we conclude it did not intend this exception. *State Comp. Fund v. Superior Court (EnerGCorp, Inc.)*, 190 Ariz. 371, 375, 948 P.2d 499, 503 (App.1997) ("The provision of one exemption in a statute implicitly denies the existence of other unstated exemptions.") (citation omitted). The privilege applies to civil actions, A.R.S. § 12–2231, and proceedings for court-ordered treatment are civil in nature. *Pima County Mental Health Matter No. MH 863–4–83*, 145 Ariz. 284, 284, 700 P.2d 1384, 1384 (App.1985). Thus, if the legislature had intended to exclude application of the privilege in mental health proceedings, we would expect its listing among the exceptions incorporated in § 12–2231.[3] Indeed, the legislature specifically excluded application of the privilege held by domestic violence victim advocates in civil commitment actions for sexually violent persons, A.R.S. § 12–2239 (2003), thereby further demonstrating that when it intends such exceptions in mental health proceedings it expressly provides for them.

¶ 11 Third, unlike the *Sabon* court, our supreme court has interpreted the words "for or against" in the anti-marital fact privilege to mean testimony on behalf of any party to the action. In *State ex rel. Woods v. Cohen*, 173 Ariz. 497, 844 P.2d 1147 (1992), the court considered the meaning of "for or against" in the context of construing A.R.S. § 13–4062(1) (Supp.2007),[4] the anti-marital fact privilege applicable in criminal proceedings. Section 13–4062(1) describes the privilege as follows:

A person shall not be examined as a witness in the following cases:

1. A husband for or against his wife without her consent, nor a wife for or against her husband without his consent, as to events occurring during the marriage....

An issue before the *Woods* court was whether the privilege "is limited to testimony adverse to a criminal defendant." 173 Ariz. at 498, 844 P.2d at 1148. The court concluded that the privilege was not so limited. *Id.* Significantly, the court reasoned as follows:

The words 'for or against' do not mean 'favorable or unfavorable.' They mean simply 'on behalf of' a spouse or 'on behalf of a party opposing' a spouse. This court has interpreted the privilege to forbid any testimony, not just damaging testimony, as to events which occurred during marriage unless the non-testifying spouse consents.... The fact that [wife] was called by the state to testify about events occurring during the marriage in a proceeding against her husband satisfies the statute. [Husband] had a right to keep her from giving any testimony as to events which occurred during their marriages, not just testimony which actually damaged his interests.

*Id.* at 502, 844 P.2d at 1152; *see also State v. Whitaker*, 112 Ariz. 537, 540, 544 P.2d 219, 222 (1975) ("The anti-marital fact privilege, as distinguished from the privilege for confidential communications between a husband and wife ... under Arizona law gives a criminal defendant, except in enumerated types of cases, an absolute right to prevent his or her

---

3. The legislature based § 12–2231 on California's anti-marital fact privilege, West's Ann. C.C.P. § 1881, *repealed by* Cal. Evidence Code §§ 970–973, 980–987, which granted a party the right to prevent his or her spouse from testifying "for or against" the other in a civil or criminal case. A.R.S. § 12–2231 Historical Note. Thereafter, California amended its statutory privilege to expressly exclude mental health cases from the reach of the anti-marital fact privilege. Cal. Evid.Code § 972(b) (2007) ("A married person

does not have a privilege [in] ... [a] proceeding to commit or otherwise place his or her spouse ... under the control of another because of the spouse's alleged mental or physical condition."). The Arizona legislature, however, has not amended § 12–2231 in this manner.

4. We cite the current version of the statute as no material changes have been made since the court's decision in *Woods*.

spouse from being called as a witness."); *State v. Drury,* 110 Ariz. 447, 451, 520 P.2d 495, 499 (1974) (holding that the anti-marital fact privilege "operates to absolutely disqualify a spouse as a witness for or against the other without his or her consent").

¶ 12 Although *Woods* interpreted the anti-marital fact privilege applicable in criminal proceedings, we do not discern why a different interpretation of the words "for or against" is warranted in interpreting the privilege in the civil context. "Statutes relating to the same subject matter should be read *in pari materia* to determine legislative intent and to maintain harmony." *Goulder v. Ariz. Dep't of Transp., Motor Vehicle Div.,* 177 Ariz. 414, 416, 868 P.2d 997, 999 (App. 1993); *see State v. Thomason,* 162 Ariz. 363, 366, 783 P.2d 809, 812 (App.1989) ("A statute should be explained in conjunction with other statutes which relate to the same subject or have the same general purpose.") (citing *State ex rel. Larson v. Farley,* 106 Ariz. 119, 471 P.2d 731 (1970)). The goal is to achieve consistency between the statutes. *Goulder,* 177 Ariz. at 416, 868 P.2d at 999. Therefore, any testimony offered by a spouse in a civil proceeding in which his or her spouse is a party is testimony "for or against" the party spouse. Because mental health commitment proceedings are civil proceedings, A.R.S. § 12–2231 applies.

¶ 13 Appellee also contends we should construe § 12–2231 as inapplicable to court-ordered treatment proceedings because excluding a spouse from testifying in a mental health proceeding would be absurd and contrary to legislative intent. Specifically, Appellee asserts that the legislature required two acquaintance witnesses, see A.R.S. § 36–539(B), to ensure the court is fully informed about the proposed patient's behavior, and a spouse likely is in the best position to provide such information. We agree with Appellee

that application of the anti-marital fact privilege in mental health proceedings may be antithetical to the court's role in determining if treatment is necessary. Whether mental health proceedings should be excepted from the privilege, however, is a policy decision for the legislature rather than this court. *State v. Williams,* 133 Ariz. 220, 232, 650 P.2d 1202, 1214 (1982) ("[T]he policy determination involving abrogation of the [anti-marital fact privilege] is an appropriate subject for legislative determination."); *Whitaker,* 112 Ariz. at 540, 544 P.2d at 222 (concluding that the anti-marital fact privilege "remains in effect in Arizona and this court is bound to enforce it until such time as it is modified or abolished by the legislature").[5]

¶ 14 In sum, the anti-marital fact privilege set forth in A.R.S. § 12–2231 applies in court-ordered treatment proceedings initiated pursuant to A.R.S. § 36–533. Therefore, unless one of the statutory exceptions applied, K.M. was entitled to invoke the privilege to prevent E.M. from testifying at the hearing.

**II.**

¶ 15 Appellee alternatively argues the trial court properly permitted E.M. to testify as the proceedings constituted a civil action by him against K.M., thereby falling within an exception to the anti-marital fact privilege. A.R.S. §§ 12–2231, –2232(1). Appellee asserts that E.M. commenced the court-ordered treatment proceedings by submitting the application for evaluation with the screening agency. We disagree.

¶ 16 E.M. did not initiate a civil action against K.M. by applying for court-ordered evaluation with the screening agency. Rather, the agency, through its deputy medical director, after successfully petitioning the

---

5. In *State v. Whitaker,* the supreme court criticized the anti-marital fact privilege and invited the legislature to reexamine its ongoing usefulness. 112 Ariz. at 540, 544 P.2d at 222. Seven years later in *State v. Williams,* the court noted that the legislature had chosen to retain the privilege in the face of the "strong disapproval" set forth in *Whitaker.* 133 Ariz. at 232, 650 P.2d at 1214. According to the court, by failing to abandon the privilege, the legislature "has made it clear that it places paramount importance on the marital relationship and believes the privilege is necessary to protect that relationship from the strain which would be placed upon it if spouses were allowed to testify against each other." *Id.* In light of the legislature's election to retain the privilege without modification in the face of the supreme court's criticism, we are further persuaded that any modifications to the privilege must be made by the legislature.

court for evaluation, initiated this case by filing a petition for treatment pursuant to A.R.S. § 36–533. E.M. is not a party to this case. Rather, he served as an acquaintance witness. Consequently, although he brought K.M.'s condition to the attention of the screening agency, he did not file a civil action against K.M. The exception set forth in § 12–2232(1) is therefore inapplicable.

## III.

¶ 17 In summary, we decide that the anti-marital fact privilege codified by A.R.S. § 12–2231 applies in proceedings for court-ordered treatment initiated by petition filed pursuant to A.R.S. § 36–533. The record before us does not reflect that any statutory exception to the privilege applied to permit E.M. to testify over K.M.'s invocation of the privilege. The trial court therefore erred by permitting E.M. to testify. The error was not harmless. *See Kline v. Kline,* 14 Ariz. 369, 373–74, 128 P. 805, 807 (1912) (holding that testimony in contravention of privilege was harmless error). Without E.M.'s testimony, only one acquaintance witness testified in violation of A.R.S. § 36–539(B), which requires two acquaintance witnesses to support an order for treatment. For this reason, we reverse and remand for additional proceedings.[6]

CONCURRING: PATRICIA K. NORRIS and MICHAEL J. BROWN, Judges.

6. In light of our decision, we need not address K.M.'s contention that the court violated her due process rights by allowing E.M. to testify.