No. 17,382.

Iwerks $v$. The People.
(273 P. [2d] 133)

Decided August 3, 1954.

Mr. George K. Thomas, for plaintiff in error.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank A. Wachob, Deputy, for the People.

*En Banc.*

Mr. Justice Knauss delivered the opinion of the Court.

Plaintiff in error, herein referred to as Iwerks, seeks

by writ of error to reverse a judgment of the county court of Adams county which denied Iwerks' petition for his release and discharge from an adjudication declaring Iwerks to be insane and incapable unassisted to properly manage and take care of his property.

It appears that Iwerks was, and for some thirty years had been, a resident of Adams county, Colorado. On the 19th day of February, 1953 he was in the county jail at Brighton, Colorado, charged with disturbance. He had for many years suffered from a glandular trouble and while incarcerated in the county jail he was, at the request of his son, visited by a physician. The doctor advised Iwerks that he could not relieve or treat his condition while in jail, and suggested that the prisoner go to the Colorado General Hospital in Denver for treatment.

It is undisputed in the record that on February 19, 1953 the Sheriff of Adams county (without process of any kind) removed Iwerks from the county jail in Brighton and took him for treatment to what Iwerks understood was to be the Colorado General Hospital. Whether Iwerks was ever actually placed in the Colorado General Hospital is not clear from the record before us. There is evidence that Iwerks was placed in the Colorado Psychopathic Hospital "to save the necessity and expense of guarding him in the Colorado General Hospital."

On February 20, 1953 Hazel Iwerks, his wife, filed a complaint in lunacy against her husband in the county court of Adams county, and on the same day said court issued its order for commitment of Iwerks to the Colorado Psychopathic Hospital and two Adams county physicians were appointed as a Commission to examine and make report as to his mental condition.

On the same day, and while Iwerks was in the Psychopathic Hospital in Denver, the county court issued its orders to take Iwerks into custody; notice of hearing of the complaint in lunacy and incident papers, and the same were delivered to the Sheriff of Adams county,

Colorado, who in due course made return that he served the same in the City and County of Denver. Obviously the jurisdiction of the Sheriff ceased at the Adams county line, and he was without authority to serve the papers as such Sheriff beyond the confines of Adams county. His action, if any, under the order to take Iwerks into custody, was merely a token arrest, for the patient was already in the Psychopathic Hospital. Counsel for Iwerks claim that the several notices and documents incident to the commitment were not served on Iwerks, and from the record we are led to believe that at least a part of them were left with the Superintendent of the Psychopathic Hospital.

At the hearing on his petition, Iwerks testified that no papers in connection with his stay in the Psychopathic Hospital or his hearing in the lunacy matter were served upon him. The Sheriff's return on the several documents issued by the Adams county court would lead one to believe that they were served by him on February 27, 1953, the date of the hearing before the Commission appointed to inquire into the mental condition of Iwerks. Just what papers the deputy sheriff claimed he served on Iwerks at the Psychopathic Hospital is a matter of grave doubt. The deputy sheriff testified as follows: "Q. I am talking about Jack (Iwerks) what did you do with Jack? A. I merely served the papers on him. Q. What papers did you serve? A. As I stated before, I didn't read the papers. Q. If you served papers, don't you know what papers you served. A. They were papers to admit him to the . . . (interpose) Q. I show you what you had marked for Defendant's Exhibit 6 and ask you if you ever saw or had a copy of that Exhibit, which is the Complaint in Lunacy, have you? A. I can't say yes or no. As I stated before I did not read the paper. I was interested in the one." The witness explained that the "one" referred to by him was a receipt for the person of Iwerks, signed by the physician in charge at the Psychopathic Hospital. Those charged with

service of process must conform to the statute, and service must be had on the interested party. In matters of this kind where grave doubt arises concerning what was actually done, that doubt must be resolved in favor of the person alleging that no service was made.

The Commission met at the Colorado Psychopathic Hospital in Denver on February 27, 1953 and made its report to the court, finding Iwerks both insane and incapable unassisted to take care of himself and his property, which report was approved by the court, and Iwerks was ordered committed to the Colorado Psychopathic Hospital. On March 24th this order of commitment was changed to the Colorado State Hospital at Pueblo, where he was received on March 27, 1953. Later, George K. Thomas, as counsel for and next friend of Iwerks filed a petition in the county court asking for his release and discharge from the order and judgment in lunacy and that Iwerks be placed in the care and custody of George K. Thomas. The county court awarded the custody of Iwerks to his next friend. Later Mr. Thomas filed an amended petition asking for the discharge of Iwerks, which petition was denied February 24, 1954.

The Attorney General commendably confesses that the county court erred in denying the original and amended or supplemental petition filed on behalf of Iwerks. He says: "The facade of the building is regular in all respects, but its foundation appears to be builded upon the sands of expediency and not on the rock of legal authority."

We have held in *Hultquist v. People,* 77 Colo. 310, 236 Pac. 995; *Kendall v. People,* 126 Colo. 573, 252 P. (2d) 91; *Barber v. People,* 127 Colo. 90, 254 P. (2d) 431; *Rickey v. People,* 129 Colo. 174, 267 P. (2d) 1021, that the statutory provisions are the measure of the power of the tribunal whose jurisdiction is questioned, and that in the absence of a strict compliance therewith, the court is without jurisdiction to act.

We will not extend this opinion by quoting from

the several cases heretofore referred to, as they definitely set forth the procedures to be followed. The provisions of our lunacy statutes must be scrupulously adhered to. In the instant case no proper service of process was had upon Iwerks.

The Attorney General having confessed that "the county court of Adams county was without jurisdiction to act, and its findings and orders entered in the premises were and are void and without effect and that the petition to discharge Iwerks should be allowed," the judgment is reversed and the cause remanded with directions to sustain the motion to vacate and immediately discharge Iwerks. It is so ordered.