No. 25514

**Alice Marie Ford v. The District Court in and for the County of Larimer, State of Colorado, and The Honorable Dale E. Shannon, one of the Judges thereof**
(498 P.2d 1125)

Decided June 19, 1972.                    Rehearing denied June 29, 1972.

Rollie R. Rogers, State Public Defender, J. D. MacFarlane, Chief Deputy, Don L. Nelson, Deputy, Edwin L. Felter, Jr., Deputy, for petitioner.

Starkey and Yeager, P.C., for respondents.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

This matter is before us under a rule to show cause after the filing of an application here under C.R.C.P. 106. The question presented for our determination is whether the petitioner, Mrs. Ford, has validly been adjudicated mentally ill. We rule in the negative and make the rule absolute.

On November 4, 1970, Evelyn Erickson, the daughter of the petitioner, filed in the respondent district court two petitions, one being a printed form and the other being typed. The printed form was that usually used for petitioning for guardianship of a minor. It prayed that the daughter be appointed as "Guardian of the estate and person of said ward Alice Marie Ford." The wholly type-written "Petition for Guardianship" recited that the daughter was her mother's conservator under the laws of the State of Iowa, that Mrs. Erickson and Mrs. Ford now are in Colorado, that Mrs. Ford's property is presently located in Colorado, and that the Iowa conservatorship should be closed. It prayed that

"Letters of Guardianship be issued for Evelyn Erickson over the person and property of said Alice Marie Ford." Certified copies of documents were filed with the court disclosing that the daughter had been appointed conservator in Iowa and that on April 18, 1969, Mrs. Ford was found to be mentally ill and was ordered to the Screening Center at the mental health institute at Cherokee, Iowa.

On the same day that the two petitions were filed, the court issued an order, which we assume was presented to it by counsel. This is on a form customarily used for the appointment of an administrator, executor or conservator. This recited that Mrs. Ford had been adjudicated an incompetent in Iowa and ordered that "Letters Guardianship of the Estate of the said Alice Marie Ford incompetent, be granted to said Evelyn Erickson" upon her taking oath and entering into bond in the sum of $40,000. No one has advised us of the authority under which the court acted, but we assume that it was under C.R.S. 1963, 153-9-5, which relates to the appointment of a conservator. The order made no mention of control of the person of Mrs. Ford.

On the same day letters of guardianship were issued to Mrs. Erickson. These recited that she had been appointed as "Guardian of the estate and person of ALICE MARIE FORD, Incompetent who was adjudged to be a mental incompetent on June 23, 1969."[1] Since that time the daughter has referred to herself as the "Guardian of the Person and Estate of Alice Marie Ford, incompetent."

On November 5, 1970, the daughter filed a petition reciting that Mrs. Ford was "placed" first in one nursing home and then "was removed" to another. In granting this petition the court restrained the officers and agents of the second nursing home from interfering with the person or affairs of Mrs. Ford and ordered her to be placed in a hospital for examination. About ten days later she was discharged

---

1. The record discloses that the daughter was appointed as conservator in Iowa on June 23, 1969, but we are unable to find any showing of adjudication of incompetency on that day.

from the hospital and apparently placed in a nursing home at Loveland, Colorado. At least, the record shows that from March 29, 1971, to date, she has been in the Loveland home.

On November 6, 1970, an attorney representing Mrs. Ford filed a petition for the appointment of a guardian ad litem for her. On January 18, 1971, he withdrew this petition and later filed a petition to have her adjudicated competent, apparently under C.R.S. 1963, 71-1-26. On the same day the court entered an order appointing two doctors of medicine to examine Mrs. Ford and report to the court. They visited her at the nursing home at Loveland. One doctor found that she was mentally ill and needed supervision and the other found that she was legally sane but had limited ability to act in a competent manner. On July 13, 1971, the respondent judge entered an order finding Mrs. Ford mentally ill "within the provisions of the Colorado Revised Statutes of 1963, as amended Chapter 71. Article 1." This order appointed the daughter as "guardian of the person and property" of Mrs. Ford. The order bears the approval of the attorneys for Mrs. Ford and Mrs. Erickson.

Mrs. Ford's attorney withdrew and a second attorney appeared for her. On December 28, 1971, he petitioned the court that she be adjudicated competent, filing a letter from a third doctor of medicine to the effect that Mrs. Ford was well oriented, in good health physically and mentally, and capable of handling her own affairs. The manager of the second mentioned nursing home filed an amended petition for an adjudication of competency. Mrs. Ford's second attorney was permitted to withdraw from the proceeding, and the court entered an order appointing the same two doctors of medicine it had earlier appointed, to again examine Mrs. Ford. For the first time a guardian ad litem was appointed. This order further provided that "[Mrs. Ford] or someone on her behalf [shall] file a cost bond in the amount of two thousand dollars ($2,000.00) with the Court prior to convening the medical commission and any hearing incident thereto." The court further ordered that no notice was to be given to the doctors or the guardian ad litem until the filing

of the bond. This order was entered on February 2, 1972, and the matter remains in this posture, except that the Public Defender now represents Mrs. Ford.

Mrs. Ford has not been validly adjudicated mentally ill in Colorado. We know of no authority for a Colorado court to restrain a person's liberty solely by reason of such an adjudication in another state. The Colorado method of adjudication is provided in 1965 Perm. Supp., C.R.S. 1963, 71-1-6 and accompanying sections. This provides that the court shall appoint a medical commission of two doctors and shall, by written order, fix a time and place for the first hearing of the medical commission. It further provides that notice shall be personally served on the respondent at least five days prior to the hearing. There has been no compliance initially or later with these statutory provisions relating to the fixing of a time and place for the hearing, and to the service of notice. Additionally, there has been a failure of compliance with other statutory provisions, which we need not specify. Under the record before us, any restraint upon the liberty of Mrs. Ford has not been valid. The approval of the July 13, 1971, order by counsel did not breathe legality into these proceedings.

There is no need to make observations and rulings with respect to the two attempts to have Mrs. Ford adjudicated competent when she had not been adjudicated incompetent, except this: The condition of a cost bond in the amount of $2,000 was arbitrary. The reason given by the court was that attorneys fees might run to $1,000 or $2,000. It would have been proper for the court, in granting the petition for another hearing as to competency, to have announced that, if she were not found to be competent, attorneys fees would not be awarded against her estate. In any event this matter has become rather academic with the public defender's entry upon the scene.

We volunteer the suggestion to Mrs. Erickson that, if she wishes to have the person of Mrs. Ford under court control, she might initiate proper proceedings under C.R.S. 1963, 71-1-1 *et seq.,* as amended, during the time in which a

petition for rehearing may be filed here and prior to the issuance of a remittitur by our clerk. We feel that we cannot ofder the court to appoint two other doctors on commission in a future proceeding, but in light of the record here we do suggest that this might be the better part of wisdom and diplomacy.

The rule is made absolute, and the respondents are directed to vacate any orders affecting control of the person of the petitioner.