The PEOPLE of the State of Colorado, Petitioner–Appellee,

In the Interest of Herbert Sanford DVEIRIN, Respondent–Appellant.

No. 86SA488.

Supreme Court of Colorado, En Banc.

May 9, 1988.

Stephen H. Kaplan, City Atty., Morris P. Evans, Asst. City Atty., Denver, for petitioner-appellee.

Law Offices of Sally S. Townshend & Susan J. Dycus, Sally S. Townshend, Denver, for respondent-appellant.

VOLLACK, Justice.

Herbert Dveirin (Dveirin or respondent) appeals the decision of the Probate Court for the City and County of Denver denying relief in the nature of habeas corpus, by which he seeks release from involuntary confinement at Fort Logan Mental Health Center.[1] At issue is whether setting aside a certification for short-term treatment invalidates subsequent certifications for long-term care and treatment. We hold that the subsequent certifications for long-term care and treatment adequately protected the due process rights of the respondent, and we therefore affirm the judgment of the probate court.

I.

The respondent is a fifty-four year old adult with a long history of psychiatric illness and hospitalization. On March 28, 1985, Dveirin was certified for short-term involuntary treatment pursuant to section 27–10–107, 11 C.R.S. (1982), after a seventy-two hour mental health evaluation revealed symptoms of manic and irritable conduct, pressured speech, hyperactivity, disconnected thought processes, and threatening statements to hospital staff. The psychiatric resident who examined him concluded that short-term treatment was required "on the basis of being gravely disabled and a possible danger to self or others."[2] The March 28 certification for short-term treatment was upheld by the trial court following a hearing on May 17, 1985. Dveirin appealed the trial court's judgment.

---

1. Since this appeal was initiated, Dveirin has been transferred to Park East Mental Health Facility where he is receiving voluntary treatment on an outpatient basis.

2. The psychiatric resident also stated:

Although his condition has improved on neuroleptic medications, he continues to demand to be released [against medical advice], and there are reasonable grounds to suspect that he would not take medications or follow

On June 28, 1985, the People filed a petition for extension of short-term treatment pursuant to section 27–10–108. After a hearing on July 17, 1985, the extension was granted. On August 19, 1985, while Dveirin's appeal was pending, a petition for certification for long-term care and treatment was filed pursuant to section 27–10–109(1). Following a hearing, Dveirin was certified for long-term care and treatment on September 28, 1985. Long-term certification was extended by six months pursuant to section 27–10–109(5) after a hearing on March 31, 1986.

On July 10, 1986, the court of appeals set aside the trial court order of May 17, 1985, for certification for short-term treatment. It agreed that the People had proved that Dveirin was mentally ill, but concluded that the People had failed to show by clear and convincing evidence as required by section 27–10–111 that, as a result of Dveirin's mental illness, he was a danger to others or to himself or was gravely disabled.[3] The court of appeals neither instructed the trial court on the appropriate procedure to implement its order nor addressed the effect of its order on subsequent certification proceedings.

On August 19, 1986, a second petition for extension of long-term care and treatment was filed. Dveirin sought judicial review of the second petition for extension of long-term care and treatment and relief in the nature of habeas corpus, based on the decision of the court of appeals to set aside the

certification for short-term treatment.[4] The Probate Court for the City and County of Denver denied his request for habeas corpus relief and upheld the extension of certification for long-term care and treatment. Dveirin appealed to this court pursuant to sections 27–10–113, 11 C.R.S. (1982), and 13–45–102, 6A C.R.S. (1987).

## II.

### A.

Procedures for involuntary confinement of the mentally ill are circumscribed by statute. *See* §§ 27–10–101 to –129, 11 C.R.S. (1982 & 1987 Supp.); Shavill, *Patients' Rights vs. Patients' Needs: The Right of the Mentally Ill to Refuse Treatment in Colorado*, 58 Den.L.J. 567, 587–88 (1981). In an emergency,[5] a patient can be detained in a facility[6] for involuntary treatment and evaluation for up to seventy-two hours. § 27–10–105. If during the seventy-two hour evaluation a member of the facility's professional staff has found the patient to be mentally ill and, as a result of mental illness, a danger to others or to himself or gravely disabled, then the patient may be certified to undergo short-term involuntary treatment not to exceed three months. § 27–10–107. The patient may demand a judicial review of the certification for short-term treatment through a hearing which must be held within ten days after the request. § 27–10–107(6). When a hearing is demanded, involuntary treat-

---

through with outpatient treatment if released, and that his disorganized thoughts and threatening behavior would return.

3. "Gravely disabled" is defined as
   a condition in which a person, as a result of mental illness, is unable to take care of his basic personal needs or is making irrational or grossly irresponsible decisions concerning his person and lacks the capacity to understand this is so. A person of any age may be "gravely disabled" under this definition, but the term does not include mentally retarded persons by reason of such retardation alone.
   § 27–10–102(5), 11 C.R.S. (1982).

4. On September 10, 1986, the respondent sought habeas corpus relief pursuant to section 13–45–102, 6A C.R.S. (1987). On September 23, 1986,

he sought additional habeas corpus relief pursuant to section 27–10–113, 11 C.R.S. (1982).

5. Under section 27–10–105, a person can be detained for seventy-two hours on an emergency basis provided he appears to be mentally ill and, as a result of such mental illness, appears to be an imminent danger to others or to himself or appears to be gravely disabled.

6. A "facility" is defined as a "public hospital or a licensed private hospital, clinic, community mental health center or clinic, institution, sanitarium, or residential child care facility that provides treatment for mentally ill persons." § 27–10–102(4.5), 11 C.R.S. (1982).

·ment cannot be ordered unless the court or jury determines that the People have shown by clear and convincing evidence that the elements of section 27–10–107 are met.[7] § 27–10–111; *People v. Taylor*, 618 P.2d 1127, 1133 (Colo. 1980). At the conclusion of the hearing, the patient must be advised of his right to appeal the order. § 27–10–111(3). The trial court retains continuing jurisdiction over all subsequent certification proceedings. § 27–10–111(4). Short-term certification can be extended once for an additional three months subject to judicial review upon demand. § 27–10–108.

A patient who has received short-term treatment for five consecutive months can be certified to undergo long-term involuntary care and treatment not to exceed six months provided that the facility's professional staff concludes that the patient is mentally ill and, as a result of mental illness, is a danger to others or to himself or gravely disabled. § 27–10–109. The patient may demand a hearing before the trial court of every petition for certification for long-term care and treatment. § 27–10–109(4). As with the certification for short-term treatment, the burden in the certification for long-term care and treatment is on the People to show that the patient is mentally ill and, as a result of mental illness, a danger to others or to himself or gravely disabled. Long-term certification expires within six months unless extended for an additional six months. An unlimited number of six month extensions may be granted, but each petition for extension is subject to review upon demand. § 27–10–109(5).

**B.**

Dveirin argues that setting aside the certification for short-term treatment creates a jurisdictional defect that invalidates all subsequent certification proceedings, thereby requiring his release. He argues that to reach a different result would render meaningless the appeals process. The People argue that the setting aside of the certification does not invalidate the subsequent proceedings because the subsequent proceedings depend upon the earlier proceedings for their existence but not for their validity. We agree with the People that the proceedings after the certification for short-term treatment protected the due process rights of the respondent throughout his involuntary care and treatment, and that Dveirin's release is not required by the civil commitment statutes.

**1.**

■ Because of the curtailment of personal liberty which results from certification of mental illness, strict adherence to the procedural requirements of the civil commitment statutes is required. *Sisneros v. District Court*, 199 Colo. 179, 606 P.2d 55 (1980); *People in Interest of Clinton*, 742 P.2d 946, 947 (Colo.App.1987), *cert. granted*, (Colo. Sept. 8, 1987); *People in Interest of Schmidt*, 720 P.2d 629, 630 (Colo.App.1986). It does not necessarily follow, however, that all subsequent proceedings which have complied with the pro-

---

**7.** Section 27–10–107 states in pertinent part:

(1) If a person detained for seventy-two hours under the provisions of section 27–10–105 or a respondent under court order for evaluation pursuant to section 27–10–106 has received an evaluation, he may be certified for not more than three months of short-term treatment under the following conditions:

(a) the professional staff of the agency or facility providing seventy-two-hour treatment and evaluation has analyzed the person's condition and has found the person is mentally ill and, as a result of mental illness, a danger to others or to himself or gravely disabled.

(b) The person has been advised of the availability of, but has not accepted, voluntary treatment; but, if reasonable grounds exist to believe that the person will not remain in a voluntary treatment program, his acceptance of voluntary treatment shall not preclude certification.

(c) The facility which will provide short-term treatment has been designated or approved by the executive director to provide such treatment.

11 C.R.S. (1982). That the respondent refused voluntary treatment after being advised of its availability, a requirement for certification for short-term treatment as well as long-term care and treatment, is not at issue.

cedural requirements of the civil commitment statutes are rendered invalid by the People's failure to meet their evidentiary burden with respect to the certification for short-term treatment. Each certification proceeding requires that a statutorily mandated time has elapsed. *See* §§ 27–10–107(1)(a), –109(1)(a), –111(1). Each step in the proceedings is in this sense sequential and dependent upon the earlier proceedings for its existence. A patient may not be certified to undergo six months of long-term involuntary care and treatment, for example, unless he has first been evaluated at a seventy-two hour mental health hold, and certified for three months of short-term treatment which has been extended for one additional three month period. *See Sisneros,* 199 Colo. at 181, 606 P.2d at 56. At each step in the proceedings, however, the patient is entitled to demand a judicial hearing at which the People must prove by clear and convincing evidence that he is mentally ill, and as a result of his mental illness, a danger to others or to himself or gravely disabled. *See* §§ 27–10–107(1)(a), –109(1)(a), –111(1). Each hearing requires an evaluation of the patient's status in the intervening time period. In that sense, each step in the proceedings serves as an independent guarantee that the patient's due process rights have been protected, based on a mixture of medical and social or legal judgments. *See Humphrey v. Cady,* 405 U.S. 504, 510 n. 6, 92 S.Ct. 1048, 1052 n. 6, 31 L.Ed.2d 394 (1972); *People v. Taylor,* 618 P.2d 1127, 1133 (Colo. 1980).

### 2.

■ Dveirin argues that any determination by this court that the court of appeals' decision has no effect because of subsequent certification proceedings would render the civil commitment statutes nothing more than a sham. He relies on *Sisneros v. District Court,* 199 Colo. 179, 606 P.2d 55 (1980), *Barber v. People,* 127 Colo. 90, 254 P.2d 431 (1953), *People in Interest of Clinton,* 742 P.2d 946 (Colo.App.1987), *cert. granted,* (Colo. Sept. 8, 1987); and *People in Interest of Schmidt,* 720 P.2d 629 (Colo.App.1986), for the proposition that when the certification for short-term treatment is set aside, the trial court lacks jurisdiction to consider any petition to continue the certification. We believe that these cases do not dispose of the issue before us.

The cases cited by the respondent recognize that failure to comply strictly with the provisions of the civil commitment statutes leaves the court without jurisdiction to decide the validity of the proceeding before it. Consequently, improper alteration of the court order authorizing a sheriff to take the patient into custody must result in the patient's discharge. *Barber v. People,* 127 Colo. 90, 254 P.2d 431 (1953) (decided under an earlier statutory scheme that did not provide for continuing court review of the patient's condition). Likewise, a trial court exceeds its jurisdiction in affirming a short-term certification petition when the respondent has not been advised of the availability of voluntary treatment, *see Sisneros,* 199 Colo. at 181, 606 P.2d at 56, when the court fails to appoint an attorney to represent the respondent "forthwith," *see Clinton,* 742 P.2d at 947, or when the respondent has accepted voluntary treatment and has not received a proper seventy-two hour mental health evaluation, *see Schmidt,* 720 P.2d at 631. In none of these cases had a subsequent certification been held. Consequently, these cases did not decide whether subsequent certification proceedings which focused on precisely the same medical and social or legal issues as the earlier certification proceeding were invalidated by the setting aside of the earlier certification proceeding.

### 3.

The conclusion that setting aside the short-term certification proceeding does not invalidate all subsequent proceedings is consistent with the requirements of the civil commitment statutes. Section 27–10–112 permits the respondent to obtain appellate review "of any order of short-term treatment or long-term care and treatment

... as provided in the Colorado appellate rules." At least two avenues of appellate review are available to a patient prior to the next step in the certification process. The first is review pursuant to C.A.R. 21, which permits relief in the nature of prohibition as an original proceeding in this court "where the district court is proceeding without or in excess of its jurisdiction." This was the procedure used in *Sisneros*. The second is review pursuant to C.A.R. 4, which was the procedure used in *Clinton*, *Schmidt*, and this case. In *Sisneros*, *Clinton*, and *Schmidt*, the respondent received appellate review of certification for short-term treatment prior to any further proceedings. If the respondent in this case had proceeded under C.A.R. 21, as was the case in *Sisneros*, and this court had issued a rule to show cause, then all proceedings would have been stayed and his due process rights could have been evaluated before any subsequent certification proceeding had occurred. The respondent did not, however, sacrifice his due process rights by pursuing his appeal by means of C.A.R. 4, because the subsequent certification proceeding served as an independent guarantee of individual rights.

The requirement of continuing judicial review of the current condition of a patient strikes a fair balance between the interest of the individual in preserving liberty, dignity, and personal integrity and the interest of society in preserving the safety of its members. Accordingly, we conclude that the certification proceedings subsequent to the certification for short-term treatment adequately protected the respondent's due process rights. The judgment of the probate court is affirmed.