Frank GILFORD, Petitioner,

v.

The PEOPLE of the State of Colorado, Respondent.

No. 99SC79.

Supreme Court of Colorado.
En Banc.

May 30, 2000.

6. Jarco fails to identify the alleged constitutional rights that it believes the Commission violated.

Judith M. Firestone, Denver, Colorado, Attorney for Petitioner.

Daniel E. Muse, City Attorney, City and County of Denver, R.W. Hibbard, III, Assistant City Attorney, Mental Health Division, Denver, Colorado, Attorneys for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

This case concerns the statutory process for committing mentally ill individuals to long-term care and treatment against their will. *See* § 27–10–109, 8 C.R.S. (1999). The only issue before us on certiorari is whether the failure to comply with the statutory requirement that a copy of the petition for longterm care and treatment be delivered personally to the individual for whom such treatment is sought creates either a jurisdictional or procedural defect requiring dismissal of the petition.[1] The court of appeals held that the failure to comply with the service provisions of section 27–10–109(2) did not deprive the trial court of personal jurisdiction over Frank Gilford in long-term certification proceedings, but nonetheless concluded that no action can be taken on the petition until such service occurs. *See People v. Gilford,* 981 P.2d 1099, 1101–02 (Colo.App.1998). We disagree with the analysis of the court of appeals, and hold, instead, that the failure to personally deliver a copy of the petition to Gilford deprived the probate court of personal jurisdiction.

## I.

Frank Gilford, the petitioner, suffers from chronic schizoaffective disorder and cocaine dependency. Over the last twenty-seven years, Gilford has been hospitalized involuntarily on at least twenty separate occasions at various state mental health facilities. These periods of hospitalization have been marked by Gilford's repeated refusal to submit to voluntary medication programs. When in an unmedicated state, Gilford exhibits pronounced psychosis and paranoia, resulting in disorganized cognition and delusion.

On December 6, 1996, Gilford was certified for short-term care and treatment pursuant to section 27–10–108, 8 C.R.S. (1999) and, shortly thereafter, was transferred to the Mental Health Corporation of Denver (MHCD). This term of care and treatment was later extended pursuant to section 27–10–108, C.R.S. (1999). The extended short-term certification order would remain in effect until June 6, 1997.

On or about April 4, 1997, Gilford terminated contact with the treatment program. It appears that Gilford was undergoing outpatient treatment at this stage of his involuntary commitment[2] and that his outpatient

---

1. The issue on which we granted certiorari is as follows:

   Whether a trial court must deny a petition for long-term care and treatment pursuant to section 27–10–109(2) when the State has not delivered a copy of the petition to the person for whom such treatment is sought prior to hearing.

2. It has been our practice to refer to the period of restraint that results from these statutory certification procedures as "involuntary confine-

regimen consisted of monthly visits to a MHCD clinic and weekly meetings with his case worker.

On May 23, 1997, while Gilford remained at large, MHCD petitioned for certification for long-term care and treatment pursuant to section 27–10–109, 8 C.R.S. (1999). A copy of the petition was delivered to Gilford's court-appointed attorney on May 29, 1997, as specifically required by section 27–10–109(2). It is undisputed that Gilford was neither served personally with a copy of the petition, as required by section 27–10–109(2), nor was he advised of the availability of voluntary treatment, as specifically required by section 27–10–109(1)(b).

On June 4, 1997, Gilford's attorney filed a motion to dismiss the petition for long-term certification on the grounds that the MHCD failed to comply with the mandatory procedures set forth under section 27–10–109. On June 6, 1996, the probate court held a hearing on the petition, the motion for authorization to administer involuntary medical treatment, and Gilford's motion to dismiss. Gilford was not present at the hearing and, by all indications, remained at large during the pendency of these proceedings. Dr. Clark, the psychiatrist appearing in support of the long-term certification order, testified that he had last observed Gilford on March 27, 1997, some two months earlier. The court, in a nunc pro tunc order issued on June 16, 1997, denied the motion to dismiss and granted both the request for long-term certification and the motion seeking authorization to administer involuntary medical treatment. This order would remain in effect until December 6, 1997.

Although the record is somewhat unclear as to what transpired after the issuance of this latest order, it appears that Gilford was taken into custody in late June. Shortly after his transfer to MHCD, Gilford filed a notice of appeal. At the court of appeals, he argued that the failure to serve him personally with notice of the long-term certification proceedings violated his due process rights and that dismissal was an appropriate remedy for this

violation. Although the court of appeals concluded that the failure to deliver to Gilford a copy of the petition did not divest the probate court of personal jurisdiction, it nonetheless held that the long-term certification proceedings could not go forward until the statutory requirement of personal service was fulfilled.

However, as the panel recognized, holding the long-term certification proceedings in abeyance pending Gilford's return to custody could potentially conflict with the statute of limitations set forth under section 27–10–109(2). The court of appeals accordingly concluded that the statutory time-limits would be tolled during Gilford's absence and that the existing short-term certification order would remain in effect until personal service could occur. Thus, Gilford was to remain under the extended short-term certification order until long-term certification proceedings could be properly initiated pursuant to section 27–10–109.

Gilford petitioned this court for a writ of certiorari and the MHCD cross-petitioned. We granted Gilford's petition and now reverse the judgment of the court of appeals.

## II.

■ We first address the threshold question as to whether the issue before us is, in fact, justiciable. The People initially contended, in response to the petition for certiorari, that the procedural posture of Gilford's case renders the issue moot and, therefore, nonjusticiable. We disagree.

During the pendency of Gilford's appeal in this case, the People filed for an extension of the certification for long-term care and treatment. See § 27–10–109(5). Gilford's court-appointed attorney responded with a motion to dismiss. It would appear (although the record does not disclose) that Gilford had been located and was in custody at this time. Hearings were held on December 12 and December 15, 1997, after which the probate court denied the motion to dismiss and granted the People's request for an extension of

ment" or "civil commitment." *See People v. Medina,* 705 P.2d 961, 964 n. 1 (Colo.1985). We

continue that practice here.

the long-term certification and their motion seeking authorization to administer involuntary medical treatment. An appeal followed. The court of appeals affirmed the order of the probate court, holding that Gilford's due process rights were not impaired as a result of the trial court's failure to conduct a hearing before the expiration date of the original long-term certification order. *See People in Interest of Gilford*, 983 P.2d 156, 158–59 (Colo.App.), *cert. denied*, No. 99SC404 (Colo. Aug. 23, 1999). The certification order at issue in that case would remain in effect until December 6, 1999.

At oral arguments before this court on March 3, 2000, Gilford's attorney could not provide definite information as to her client's current whereabouts or present circumstances. Although it may well be that Gilford is no longer subject to restraint pursuant to an enforceable certification order, both he and similarly situated individuals may be threatened with such restraint in the future by operation of the very procedures challenged here. Because civil commitment procedures necessarily implicate protected liberty interests, *see People in Interest of Dveirin*, 755 P.2d 1207, 1209 (Colo.1988), and because we view this issue as one that is capable of repetition, yet evasive of our review, we elect to resolve it. *See Feigin v. Colorado Nat'l Bank*, 897 P.2d 814, 817 (Colo.1995) (citing cases); *see also People in Interest of Hoylman*, 865 P.2d 918, 920 (Colo.App.1993); *People in Interest of King*, 795 P.2d 273, 274 (Colo.App.1990).

### III.

#### A.

Gilford contends that the probate court erred in refusing to dismiss the petition for certification for long-term care and treatment, and that the court of appeals compounded this error by concluding that tolling of the statutory time-limits, not dismissal, is the appropriate remedy for a violation of the personal delivery requirement set forth under section 27–10–109(2). He first argues that dismissal is required because the failure to comply with the personal delivery requirement divests the trial court of personal juris-

diction. If the probate court did not have jurisdiction over him, then it had no power to act on the petition for long-term certification. *See, e.g., Iwerks v. People*, 130 Colo. 86, 89, 273 P.2d 133, 134–35 (1954) (citing cases).

Arguing in the alternative, Gilford maintains that, even if the failure to comply with section 27–10–109(2) does not amount to an incurable jurisdictional defect, it nonetheless constitutes a violation of an "essential condition" of the statutory process, which is so grave as to " 'undermine confidence in the fairness and outcome of the certification proceedings.' " *People in Interest of Lynch*, 783 P.2d 848, 851 (Colo.1989) (quoting *People in Interest of Clinton*, 762 P.2d 1381, 1389 (Colo.1988)).

Deviations from the statutory process governing civil commitment proceedings, however minor, are subject to exacting appellate review, for even the slightest departure from these codified procedures can raise profound constitutional concerns. *See, e.g., Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (citing cases); *see also Dveirin*, 755 P.2d at 1209; *People v. Medina*, 705 P.2d 961, 967 (Colo.1985); *Sisneros v. District Court*, 199 Colo. 179, 181, 606 P.2d 55, 57 (1980), *disapproved on other grounds by Clinton*, 762 P.2d at 1386 n. 2; *Goedecke v. Department of Insts.*, 198 Colo. 407, 412, 603 P.2d 123, 126 (1979). Civil commitment statutes establish a process by which the State may act to deprive a discrete class of mentally ill individuals of their personal liberty for an extended period of time, either by detaining or closely monitoring them against their will.

As our own civil commitment statutes attest, an individual can be confined to a mental health facility or subjected to varying degrees of supervision for an indefinite period, even though she has not engaged in any form of criminal conduct. *See* §§ 27–10–105 to –109, 8 C.R.S. (1999). Although involuntary commitment carries with it some of the stigma and deprivations commonly associated with criminal convictions, it must be stressed that commitment proceedings are not criminal in nature. *See Kendall v. People*, 126 Colo. 573, 577, 252 P.2d 91, 93 (1952). Rather, they are special proceedings conducted

according to statutorily defined procedures. *See Sabon v. People*, 142 Colo. 323, 327–28, 350 P.2d 576, 579 (1960); *Hultquist v. People*, 77 Colo. 310, 315, 236 P. 995, 997 (1925). Since commitment proceedings are not designed to address criminal conduct, but rather are concerned only with the present and future mental health and well-being of the mentally ill individual, it necessarily follows that "[n]o penal or punitive considerations underlie the state's interest in .... commitment." *People v. Chavez*, 629 P.2d 1040, 1048 (Colo.1981).

Although rooted in history and basic notions of ordered liberty,[3] civil commitment statutes must nonetheless be regarded as an extraordinary manifestation of the government's ability to restrain the liberty of its citizens. *See Medina*, 705 P.2d at 967. And, while the State has a legitimate interest in providing care to the mentally ill and in "protect[ing] the community from the dangerous tendencies of some who are mentally ill," courts have long recognized that these interests must yield to the substantial rights of those individuals who face involuntary commitment. *Addington*, 441 U.S. at 426–27, 99 S.Ct. 1804. In *People in Interest of Clinton*, 762 P.2d 1381, and *People in Interest of Lynch*, 783 P.2d 848, we sought to mediate the legitimate interests of the State and the weighty constitutional interests of individuals facing civil commitment by developing a method for analyzing and assessing the magnitude of procedural defects arising in the context of certification proceedings. Our review therefore proceeds in careful accordance with those cases.

### B.

As we observed in *Lynch*, the cases in which we have reversed civil commitment orders due to the failure to comply strictly with statutory requirements generally fall under two broad categories: (1) those cases involving "some failure to comply with essential statutory requirements in mental health certification proceedings"; and, (2) those

cases involving noncompliance with jurisdictional provisions of the statute, such as "defects in notice or process, or attempts by courts to exercise power over persons residing outside the statutorily prescribed territorial limits of the courts' jurisdiction in mental health cases." 783 P.2d at 850 (chronicling cases).

The first category of cases involves a deprivation of essential procedural rights that substantially impairs the fundamental fairness of the certification proceedings, but does not implicate jurisdictional concerns. *See Clinton*, 762 P.2d at 1390. The second category of cases involves a narrow class of procedural defects, viz. lack of notice, faulty process, or the failure to satisfy residency requirements, that necessarily call into question the court's jurisdiction over the parties to the case. *See id.* at 1386. Also included within this second category of cases are situations in which the failure to properly initiate a mental health proceeding casts doubt on the court's jurisdiction over the subject matter of the case. *See id.; see also People in the Interest of Lloyd–Pellman*, 844 P.2d 1309, 1311–12 (Colo.App.1992) (deeming failure to initiate emergency hold in proper court fatal to court's subject-matter jurisdiction).

Thus, when analyzing deviations from the statutory process governing mental health certification proceedings, we begin by asking whether the court enjoys jurisdiction over the subject matter of the case. *See Lynch*, 783 P.2d at 851. Once subject matter jurisdiction is established, we assess whether the defect implicates the court's jurisdiction over the person of a respondent to a mental health proceeding. A defect in personal jurisdiction may arise where the departure from statutory procedure concerns notice, service of process, or residency limitations on a court's jurisdiction. *See id.*

If the defect does not involve one of these jurisdictional prerequisites, we proceed to inquire "whether the defect concerns a failure to comply with essential statutory provisions

---

3. For an overview of the history of civil commitment statutes and their origins in law, see *Kansas v. Hendricks*, 521 U.S. 346, 357, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). *See also* Note,

*Civil Commitment of the Mentally Ill: Theories and Procedures*, 69 Harv. L.Rev. 1288, 1288 (1966).

grave enough to 'undermine confidence in the fairness and outcome of the certification proceedings.'" *Id.* (quoting *Clinton*, 762 P.2d at 1389). We assess the magnitude of the procedural violation and its impact on the fairness of the proceedings "'by (1) evaluating the gravity of the deviation from statutory provisions, including a consideration of due process concerns, and (2) determining any prejudice to the respondent caused by the deviation.'" *Id.* at 852 (footnote omitted) (quoting *Clinton*, 762 P.2d at 1389).

## IV.

### A.

We first consider whether the failure to personally deliver a copy of the petition for long-term certification to Gilford is fatal to either the probate court's subject matter or personal jurisdiction. This part of our inquiry concerns the second category of cases identified and discussed in *Clinton*, 762 P.2d at 1384.

#### 1.

■ "Subject matter jurisdiction 'concerns the court's authority to deal with the class of cases in which it renders judgment.'" *Id.* at 1387 (quoting *In re Marriage of Stroud*, 631 P.2d 168, 170 (Colo.1981)); *see also Stone's Farm Supply, Inc. v. Deacon*, 805 P.2d 1109, 1113 (Colo.1991). In order to act on a matter, a court's authority must first be invoked by operation of law. *See Clinton*, 762 P.2d at 1387; *see also Isham v. People*, 82 Colo. 550, 567–68, 262 P. 89, 96 (1927) ("Jurisdiction of the subject matter is conferred by the Constitution and laws of the state, not by the action of one or both parties."). Jurisdiction over the subject matter of mental health proceedings is conferred on our district courts by article IV, section 9 of the Colorado Constitution.[4]

Gilford does not challenge the probate court's exercise of jurisdiction over the subject matter of his case. Although this concession is not conclusive of our inquiry, we have little trouble concluding that the Denver Probate Court enjoyed subject matter jurisdiction over the long-term certification proceedings in issue here. *See* Colo. Const. art. IV, § 9(3); *see also* § 13–9–103, 5 C.R.S. (1999). Finding no error, we advance to the next stage of our jurisdictional analysis.

#### 2.

■ Personal jurisdiction "'is based on having legal authority over the [respondent's person].'" *Clinton*, 762 P.2d at 1386 (quoting F. James, Jr. & G. Hazard, Jr., *Civil Procedure* § 2.15 (2d ed.1985)). "A state cannot exercise its adjudicatory authority over a party .... unless it has both the statutory authority and the constitutionally recognized power to do so." Jack H. Friedenthal, et al., *Civil Procedure* § 3.1, at 94 (2d ed.1993).[5] Moreover, "procedural due process notions require that a court not exercise its adjudicatory authority unless the persons whose rights will be affected have been given adequate notice and an opportunity to be heard." *Id.* § 3.1, at 95 (footnote omitted). As noted above, "[n]oncompliance with statutory provisions only involve[s] personal jurisdiction if those statutes pertain to 'notice, service of process, or the statutory residence requirements concerning the persons over whom a court may acquire jurisdiction.'" *Deacon*, 805 P.2d at 1113 (quoting *Clinton*, 762 P.2d at 1386); *see also Weber v. Williams*, 137 Colo. 269, 277, 324 P.2d 365, 369 (1958) ("[A]bsence of legal service or authorized appearance is jurisdictional.").

■ The fact that the instant case involves a failure to comply with the service of process requirement set forth under sec-

---

4. Jurisdiction over civil commitment proceedings initiated in the City and County of Denver vests in a separate probate court. *See* Colo. Const. art. IV, § 9(3); *see also* § 13–9–103, 5 C.R.S. (1999).

5. The provisions of section 13–9–103(6), 5 C.R.S. (1999) make clear that the statutory basis for personal jurisdiction resides in the various statutes governing mental health proceedings. The

statute states that: "The provisions of ... articles 10 to 15 of title 27, C.R.S., shall govern the issuance and service and proof of service of any process, notice, citation, writ or order of court and shall govern all other proceedings had pursuant to the powers of the court recited in subsections (1) and (2) of this section." § 13–9–103(6).

tion 27–10–109(2) allows for the inference that the error is jurisdictional in nature. *See Lynch,* 783 P.2d at 850. However, before determining the exact nature of the error, we must first address the People's contention that Gilford has waived any complaint regarding the probate court's jurisdiction over his person.[6] The thrust of their waiver argument is that Gilford failed to raise the issue in responsive pleadings before the probate court. Our review of the record and accompanying transcripts convinces us that the issue was raised and properly contested in Gilford's responsive filing of June 4, 1997, which he styled an "Objection to Hearing and Motion to Dismiss." Accordingly, we reach the merits of this aspect of Gilford's jurisdictional complaint.

The People argue that the defects in service of process that Gilford now complains of in no way bear on the probate court's jurisdiction over him. Apparently relying on section 27–10–111(4), 8 C.R.S. (1999),[7] they aver that such jurisdiction was established at the time that the short-term certification was filed. The court of appeals agreed and held that personal jurisdiction was established by service of process in the short-term proceeding. We do not agree. This argument misapprehends the purpose of section 27–10–111(4), which concerns questions of venue,[8] and vitiates the various procedural requirements set forth under the mental health statutes. Moreover, we have never suggested

that section 27–10–111(4) has any bearing on our analysis of personal jurisdiction. *See Lynch,* 783 P.2d at 851; *Clinton,* 762 P.2d at 1387.

The certification process consists of "sequential and dependent" steps. *Dveirin,* 755 P.2d at 1210. At each stage of the certification process there exist distinct statutory procedures for establishing jurisdiction over the mentally ill individual. *See id.* In emergency situations or where a court-ordered evaluation is sought, a court establishes personal jurisdiction by obtaining physical custody of the person. *See* § 27–10–105(1)(b), 8 C.R.S. (1999) (emergency procedure); § 27–10–106(6), 8 C.R.S. (1999) (court-ordered evaluation); *cf. Selph v. Buckallew,* 805 P.2d 1106, 1108 (Colo.1991) (noting that physical custody of criminal defendant suffices to confer jurisdiction over his person). Physical custody may be effected by way of an arrest warrant or by voluntary appearance. Once an emergency or court-ordered evaluation has been conducted and the requisite findings of dangerousness or disability have been made, short-term certification proceedings may be initiated pursuant to the procedures set forth under section 27–10–107.

A court may exercise jurisdiction over a respondent to short-term certification only if there is compliance with the service and notice provisions of section 27–10–107(3).[9] *See Iwerks,* 130 Colo. at 89, 273 P.2d

---

6. As a general rule, "[t]he defense of lack of personal jurisdiction is waived if it is not raised in the [responsive] pleadings." *Stone's Farm Supply, Inc. v. Deacon,* 805 P.2d 1109, 1113 (Colo.1991). Waiver of personal jurisdiction requirements may either be express or implied. *See Lynch,* 783 P.2d at 852.

7. Section 27–10–11(4), 8 C.R.S. (1999) reads:
The court in which the petition is filed under section 17–10–106 or the certification is filed under section 27–10–107 shall be the court of original jurisdiction and continuing jurisdiction for any further proceedings under this article. When the convenience of the parties and the ends of justice would be promoted by a change in the court having jurisdiction, the court may order a transfer of the proceeding to another county. Until further order of the transferee court, if any, it shall be the court of continuing jurisdiction.

8. Venue must be distinguished from jurisdiction: the former "is simply a statutory device designed

to facilitate and balance the objectives of optimum convenience for parties and witnesses and efficient allocation of judicial resources," while the latter "deals with the power of a court to hear and dispose of a given case." Jack H. Friedenthal, et al., *Civil Procedure* § 2.1, at 10 (2d ed.1993) (footnote omitted). The provisions of section 27–10–111(4) are couched in terms of efficiency and convenience to the parties, both of which are considerations particular to venue. Moreover, the concept that original jurisdiction continues until the transferee court acts merely facilitates orderly change of venue.

9. The pertinent provisions of section 27–10–107(3), 8 C.R.S. (1999), read:

Within twenty-four hours of certification, copies of the certification *shall be personally delivered* to the respondent, and a copy shall be kept by the evaluation facility as part of the person's record ... In addition to the copy of the certification, the respondent *shall be given written notice* that a

at 134–35; *cf. Barber v. People,* 127 Colo. 90, 95–6, 254 P.2d 431, 434 (1953) ("[V]alid service upon the respondent of the actual order entered by the court, authorizing seizure of respondent, is an essential prerequisite to the right of any commission to make inquiry into her sanity . . . ."). Should an individual under a short-term or extended short-term certification order later be deemed eligible for long-term certification, jurisdiction over the respondent may be acquired only by complying with the statutory procedures set forth under section 27–10–109(2). Jurisdiction over the respondent's person is perfected when a copy of the petition is personally delivered to her and another copy is mailed to her attorney of record on the same date the petition is filed. *See* § 27–10–109(2).[10]

■ The more stringent notice requirements of section 27–10–109(2) merely reflect the respondent's increasingly important interest in the outcome of the proceedings. In short, the varying degrees of deprivation that result from the different phases of the mental health proceedings demand differing types of process. And, as we have observed previously, "each step in the proceeding serves as an independent guarantee that the patient's due process rights have been protected . . . ." *Dveirin,* 755 P.2d at 1210. It is beyond dispute that due process concerns pervade jurisdictional matters, particularly where substantial personal interests are at stake. *See, e.g.,* Friedenthal, supra, § 3.19, at 166 (chronicling cases). The purpose underlying the statutory requirement that every respondent to a certification proceeding initiated pursuant to section 27–10–109 be served personally with a copy of the petition for long-term care and treatment is to provide individuals with fair and adequate notice. *See Hultquist,* 77 Colo. at 315, 236 P. at 998. Such notice is the keystone of personal jurisdiction; without it, courts have no "power to subject a particular defendant to [its] decisions." *Deacon,* 805 P.2d at 1113.

■ Thus, the failure to serve process on a respondent to a long-term civil commitment proceeding is not merely a technical violation of the statute or a minor procedural oversight: it diminishes significantly the substantial due process rights of individuals who are threatened with a protracted period of involuntary confinement. *See Hultquist,* 77 Colo. at 315–16, 236 P. at 998. We therefore hold that the failure to deliver personally to Gilford a copy of the petition for long-term certification, as required by section 27–10–109(2), deprived the probate court of jurisdiction over him. *See Iwerks,* 130 Colo. at 89, 273 P.2d at 134–35; *see also Ford v. District Court,* 179 Colo. 64, 68, 498 P.2d 1125, 1128 (1972).[11] We accordingly disapprove the court of appeals' conclusion that:

> when a respondent is unavailable for service, any existing court orders for short-term certification and involuntary medication are continued and . . . . the relevant time limits for a hearing on a petition for long-term care are tolled until a copy of the petition for long-term care can be personally delivered to the respondent.

*Gilford,* 981 P.2d at 1101–02.

It is urged upon us that Gilford's repeated attempts to absent himself from treatment, along with his successful efforts to make himself unavailable for service, warrant such measures. *Cf. Isham,* 82 Colo. at 564–65,

---

hearing upon his certification for short-term treatment may be had before the court or a jury

. . .

(Emphasis added.)

**10.** Although the service provisions for short-term and long-term certification appear similar, there are significant differences. *Compare* § 27–10–107(3) ("Within twenty-four hours of certification, copies of the certification shall be personally delivered to the respondent.") *with* § 27–10–109(2) ("A copy of the petition shall be delivered personally to the respondent . . . . and mailed to his attorney of record simultaneously with the

filing thereof."). This difference is explained by the fact that these are separate statutory proceedings requiring different types of process and different degrees of notice.

**11.** Our decision of *Hultquist* is not contrary to these cases. As we observed in *Clinton,* 762 P.2d at 1384, "We explicitly did not decide a jurisdictional issue in *Hultquist.* . . ." That we did not reach the jurisdictional issue in that case does not mean, of course, that the defect complained of was not jurisdictional in nature. We merely elected to resolve the issue on alternative grounds.

262 P. at 94–5.[12] We are not persuaded. The statutory scheme governing mental health proceedings is designed to humanely administer care and treatment to mentally ill individuals in the least intrusive and least coercive manner available. *See generally* § 27–10–101, 8 C.R.S. (1999). The legislature has attempted to ensure that its will is honored by building into the civil commitment statutes a variety of procedural safeguards. One such safeguard is statutorily mandated time limitations on commitment. *See* §§ 27–10–105(3) (not to exceed seventy-two hours), –106(7) (same), –107(1) (not to exceed three months), –108 (not to exceed three-month extension), –109 (not to exceed six months); *see also Dveirin*, 755 P.2d at 1210. Tolling these statutory time-limits simply does not give effect to the express intent of the legislature.

The probate court is without personal jurisdiction over Gilford to proceed on the petition for long-term care and treatment. Because we have determined that the failure to personally deliver the petition for long-term care and treatment is a jurisdictional prerequisite, we need not reach the question whether an "essential condition" of the statute was violated.

## V.

Accordingly, we affirm the judgment of the court of appeals but reverse its holding that the probate court had personal jurisdiction. We hold that the failure to deliver personally to a respondent in a mental health proceeding a copy of the petition for long-term care and treatment, as required by section 27–10–109(2), is reversible error and merits dismissal of the petition. The case is remanded to the court of appeals and that court is directed to return the case to the probate court for further proceedings consistent with this opinion.

Justice HOBBS concurs in part and concurs in the result, and Justice RICE joins him in this concurrence.

Justice COATS does not participate.

Justice HOBBS, concurring in part and concurring in the result:

## I.

I respectfully concur in part and concur in the result. In my view, section 27–10–109(2), 8 C.R.S. (1999), provides the means by which notice should be given to the respondent in a long-term commitment proceeding, and does not implicate jurisdiction. I agree with the court of appeals' conclusion that the probate court had personal jurisdiction over Gilford based on section 27–10–111(4), 8 C.R.S. (1999). While I agree with the majority that the probate court's long-term commitment order cannot stand, I do not base this decision on the lack of jurisdiction over Gilford, but rather on a procedural violation of the long-term commitment statute that prejudiced him.

### A. Personal Jurisdiction

The statutory provision for long-term care and treatment of the mentally ill describes the manner in which a copy of the petition for long-term care is to be provided to the respondent notifying him or her of the upcoming hearing. *See* § 27–10–109(2). It provides:

> A copy of the petition *shall be delivered* personally to the respondent for whom long-term care and treatment is sought and mailed to his attorney of record simultaneously with the filing thereof.

§ 27–10–109(2) (emphasis added). This provision is similar to that of section 27–10–107(2), the certification for short-term treatment provision. *See* § 27–10–107(3), 8 C.R.S. (1999) ("Within twenty-four hours of certification, copies of the certification shall be personally delivered to the respondent.") Commencement of both short-term and long-term commitment proceedings against a respondent first requires compliance with

---

**12.** *Isham* appeared to present the question whether the failure to personally serve a respondent with notice of a lunacy proceeding gives rise to a jurisdictional defect. Although the *Isham* court concluded that the jurisdictional complaint

had not been preserved, the statute in effect at the time allowed for substituted service on the guardian ad litem, which occurred in Isham's case.

section 27–10–106, 8 C.R.S. (1999), which provides for court-ordered evaluations of mentally ill persons. Under that provision, the court makes a probable cause determination, which may result in the issuance of an order authorizing a peace officer to take the respondent into custody for a seventy-two-hour treatment and evaluation. *See* § 27–10–106(7). At this point, the statute provides that a copy of the petition and the order for evaluation be personally given to the respondent. *See* § 27–10–106(6).

The General Assembly has made it clear that jurisdiction over the respondent for subsequent short-term and long-term commitment proceedings extends from the personal delivery of a copy of the petition and order for evaluation pursuant to section 27–10–106(6). Section 27–10–111(4) provides:

> The court in which the petition is filed under section 27–10–106 [court-ordered evaluation for mentally ill persons] or the certification is filed under section 27–10–107 [certification for short-term treatment] *shall be the court of original jurisdiction and of continuing jurisdiction for any further proceedings under this article.* When the convenience of the parties and the ends of justice would be promoted by a change in the court having jurisdiction, the court may order a transfer of the proceeding to another county. Until further order of the transferee court, if any, it shall be the court of continuing jurisdiction.

(Emphasis added.) I therefore disagree with the majority's characterization that this provision relates to venue and not jurisdiction. *See* maj. op. at 127.

We must read and consider a statute as a whole and give consistent, harmonious, and sensible effect to all of its parts. *See, e.g., AviComm v. Colorado Pub. Utils. Comm'n,* 955 P.2d 1023, 1031 (Colo.1998). We "are not to presume that the legislative body used the language idly and with no intent that meaning should be given to its language." *Colorado Ground Water Comm'n v. Eagle Peak Farms, Ltd.,* 919 P.2d 212, 218 (Colo.1996). In section 27–10–111(4), the General Assembly specifically used the word "jurisdiction" to provide the basis for "continuing jurisdiction for any further proceedings under this

article." In evident contrast to the jurisdictional provision of subsection (4), in subsection (4.5) of section 27–10–111, the General Assembly used the words "jurisdiction and venue."

The majority cites *People v. Lynch,* 783 P.2d 848 (Colo.1989), and *People v. Clinton,* 762 P.2d 1381 (Colo.1988), in support of its conclusion that section 27–10–111(4) has no bearing on personal jurisdiction. In *Lynch,* however, this court specifically noted that "because the respondent [did] not raise the possibility of a defect in the district court's personal jurisdiction, and the record does not suggest one, we will confine our discussion to subject matter jurisdiction." *Lynch,* 783 P.2d at 851. Similarly, *Clinton* involved a procedural defect in the appointment of counsel and the court there specifically noted that personal jurisdiction was not at issue. *See Clinton,* 762 P.2d at 1386–87.

Personal jurisdiction "is based on having legal authority over the respondent's person." *See id.* at 1386 (internal quotation marks omitted). A court does not generally lose jurisdiction by the occurrence of a subsequent event, even if that event would have prevented acquiring jurisdiction in the first instance. *See Secrest v. Simonet,* 708 P.2d 803, 807 (Colo.1985) (holding that jurisdiction is not lost by removal of a defendant from the territory).

Here, Gilford was admitted to Denver Health Medical Center on a mental health hold from the Mental Health Corporation of Denver written on December 3, 1996. After being detained for the statutorily mandated seventy-two-hour evaluation, Gilford was then certified for short-term treatment on December 6, 1996. At that time, Gilford was personally delivered a copy of the short-term certification.

There is no dispute that the court initially had personal jurisdiction over Gilford. The majority concludes, however, that the probate court somehow lost jurisdiction over Gilford because he did not receive notice of the long-term treatment hearing. While lack of personal notice to Gilford violated the statutory procedural requirements for long-term treatment, by section 27–10–111(4), jurisdiction over him continued in the probate court.

## B. Procedural Violation & Due Process

The probate court proceeded with the long-term commitment hearing despite the failure to deliver the petition for long-term commitment to Gilford. We have stated that commitment of a patient to a mental institution signifies a severe infringement on the basic interest of that individual to be free from governmental restraint. *See People v. Medina*, 705 P.2d 961, 967 (Colo.1985). A patient's due process rights must be protected, and a fair balance must be struck between "the interest of the individual in preserving liberty, dignity, and personal integrity and the interest of society in preserving the safety of its members." *In re Dveirin*, 755 P.2d 1207, 1211 (Colo.1988).

We have held that failure to comply with a statutory provision that is an essential condition of the mental illness statutes may amount to reversible error. *See Clinton*, 762 P.2d at 1388; *Lynch*, 783 P.2d at 852. Whether a particular provision constitutes an "essential condition" depends on whether a violation of it is so serious as "to undermine confidence in the fairness and outcome of the certification proceedings." *See Clinton*, 762 P.2d at 1389; *Lynch*, 783 P.2d at 852. In *Clinton*, we stated that such an assessment is accomplished by "(1) evaluating the gravity of the deviation from statutory provisions, including a consideration of due process concerns, and (2) determining any prejudice to the respondent caused by the deviation." *Id.*

When, as here, the mentally ill individual did not have personal notice of the long-term commitment proceeding, the court cannot enter the commitment order. In *Hultquist v. People*, 77 Colo. 310, 316, 236 P. 995, 998 (1925), we held that the failure to provide notice to the respondent violated an essential statutory condition and implicated due process concerns. Although Gilford's attorney was present at the long-term commitment hearing, the lack of notice deprived Gilford of his opportunity to exercise procedural rights personally granted to him under the mental illness statutes. *See Clinton*, 762 P.2d at

1390. As the court of appeals noted, the purpose of the delivery requirement is to provide the respondent with an opportunity to be present at the hearing, to confront witnesses, and be heard. *See People v. Gilford*, 981 P.2d 1099, 1101 (Colo.App.1998). Under the facts here, Gilford was not aware that he was subject to an extended period of commitment and involuntary medication. Thus, entry of the final commitment order constituted a substantial deviation from the mental illness statutes, and prejudiced Gilford.

## II.

While I disagree that the probate court lost personal jurisdiction over Gilford, I agree with the majority's conclusion that, in this case, failure to provide delivery of the long-term commitment petition in accordance with section 27–10–109(2) constitutes reversible error.[1]

Accordingly, I respectfully concur in part and concur in the result.

I am authorized to say that Justice RICE joins in this concurrence.

---

1. This result necessarily follows from the language of the mental illness statutes. Section 27–10–109(2) states that every long-term petition "shall include a request for a hearing before the court prior to expiration of six months from the date of original certification." The statute does not provide for variation of the time-frame for the hearing when a mentally ill person is unavailable for delivery of the long-term commitment petition. Thus, as here, when the time periods of the statute expire, the long-term commitment petition must be dismissed.