25CA0504 Peo in Interest of Powell 05-08-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0504
Arapahoe County District Court No. 25MH149
Honorable H. Clay Hurst, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Monique Powell,

Respondent-Appellant.

---

ORDER AFFIRMED

Division VII
Opinion by JUDGE PAWAR
Lipinsky and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 8, 2025

---

Ronald Carl, County Attorney, Meghan Rubincam, Senior Assistant County Attorney, Aurora, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1    Monique Powell appeals the district court's order authorizing short-term care and treatment under section 27-65-109, C.R.S. 2024, and authorizing the involuntary administration of three antipsychotic medications and three side effect medications. We affirm.

## I.    Background

¶ 2    At the end of February, Powell brought her five-year-old son to Children's Hospital because she believed that he needed oral surgery. Several doctors at the hospital observed disorganization in Powell's thought process, and she was brought to Highland Behavioral Health (Highland) for treatment and observation. Dr. Alexander Maksymenko was assigned as her treating physician. He diagnosed her with unspecified schizophrenia spectrum and other psychotic disorders.

¶ 3    On March 4, 2025, Dr. Maksymenko filed a notice of certification and certification for short-term treatment, in which he alleged that Powell was both a danger to herself and gravely disabled. He sought authorization to involuntarily treat her with several antipsychotic and side effect medications. The court appointed counsel for Powell and set a hearing for March 18, 2025.

1

¶ 4    Following the evidentiary hearing, at which both Dr. Maksymenko and Powell testified, the district court entered an order certifying Powell for short-term care.  The court found by clear and convincing evidence that Powell had a mental health disorder; was gravely disabled; and had been offered, but had refused, voluntary treatment.  The court also found that the People had established all four of the elements for involuntary administration of medication set forth in *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985), and accordingly ordered the administration of Haldol, Prolixin, Thorazine, Benadryl, Cogentin, and Ativan (in all available forms) to Powell against her will.

## II.    Discussion

¶ 5    Powell challenges the sufficiency of the evidence supporting the order.  In particular, she contends the evidence was insufficient to support the district court's findings that (1) she was gravely disabled and (2) the fourth *Medina* element was met.  We address each contention in turn.

### A.    Standard of Review

¶ 6    When a party challenges the sufficiency of the evidence, we review the record as a whole and, viewing it in the light most

2

favorable to the People, determine whether the evidence is sufficient to support the court's decision. *People in Interest of Ramsey*, 2023 COA 95, ¶ 23. We review de novo the court's conclusions of law and defer to the court's findings of fact, including the weight and credibility afforded to the witnesses, if supported by the record. *People in Interest of Strodtman*, 293 P.3d 123, 131 (Colo. App. 2011); *People in Interest of C.A.K.*, 652 P.2d 603, 613 (Colo. 1982). "The district court, as fact finder, 'has discretion to determine the credibility of the witnesses; the sufficiency, probative effect, and weight of the evidence; and the inferences and conclusions to be drawn from it.'" *People in Interest of R.C.*, 2019 COA 99M, ¶ 7 (quoting *People in Interest of S.M.A.M.A.*, 172 P.3d 958, 962 (Colo. App. 2007)).

### B. Certification for Short-Term Treatment

¶ 7 Section 27-65-109(1)(a) provides, in pertinent part, that a person with a mental illness "may be certified for not more than three months for short-term treatment" if

> [t]he professional staff of the facility detaining the person on an emergency mental health hold has evaluated the person and has found the person has a mental health disorder and, as a result of the mental health disorder, is a

danger to the person's self or others or is gravely disabled.

¶ 8　　The person or facility seeking to detain another for mental health care and treatment has the burden of proving by clear and convincing evidence that the subject person "has a mental health disorder and, as a result of the mental health disorder, is a danger to [the person's] self or others or is gravely disabled." § 27-65-113(1), C.R.S. 2024. Evidence is clear and convincing when it "persuades the trier of fact that the truth of the contention is 'highly probable.'" *People v. Taylor*, 618 P.2d 1127, 1136 (Colo. 1980) (quoting *Page v. Clark*, 592 P.2d 792, 800 (Colo. 1979)).

¶ 9　　Powell challenges the district court's finding that she is gravely disabled. As relevant here, "gravely disabled" means

> a condition in which a person, as a result of a mental health disorder, is incapable of making informed decisions about or providing for the person's essential needs without significant supervision and assistance from other people. As a result of being incapable of making these informed decisions, a person who is gravely disabled is at risk of . . . significant psychiatric deterioration . . . that could result in substantial bodily harm.

§ 27-65-102(17), C.R.S. 2024. The supreme court has explained that a person is gravely disabled if the person is unable to take care

of their basic personal needs, such as food, shelter, clothing, and medical care. *Taylor*, 618 P.2d at 1134.

¶ 10 The district court found that Powell is gravely disabled because she is not able to make "appropriate decisions" without help from her mother or a guardian. The court further found that, without assistance, Powell "would make bad decisions that would put her at risk of harm to herself." The record supports these findings.

¶ 11 At the hearing, Dr. Maksymenko testified that Powell "cannot fully communicate and explain her needs" or "continue [a] linear logical conversation about . . . her plan for [the] future." He added that she "cannot clearly explain her history," exhibits "tangential thinking," and is "disorganized and delusional in her thought process." Dr. Maksymenko explained that despite Powell's "intellectual ability she cannot connect simple dots between and proceed with a simple conversation," and it is "very difficult" to have a logical conversation with her or understand what she is trying to say. Indeed, the court noted in its findings that Powell's testimony at the hearing was consistent with this characterization and

"[l]istening to her testimony alone" supported a finding that she is gravely disabled.

¶ 12　　Dr. Maksymenko also testified that Powell had several previous visits to the emergency room based on various mental health concerns. He explained that although in the past she "was able to be communicative enough to make her way out of those emergency rooms," this time "it's a little more severe." He continued that, because she "is disorganized, she could make a bad decision for herself," which could "place her in risk of . . . abuse." Dr. Maksymenko further opined that, "[i]n this condition, she would not be able to . . . take care [of] her child."

¶ 13　　Dr. Maksymenko also addressed Powell's ability to care for her basic personal needs, testifying that she needs to improve her hygiene. For example, he explained that she was "not showering daily" and instead did "some kind of sink freshness" and wore "multiple clothes and some of them upside down." Moreover, because Powell has a young child, Dr. Maksymenko testified that he "ha[s] some concerns if she is able to . . . support her child in full" given her inability to fully attend to her own hygiene. When asked if she was taking care of her hygiene, Powell elaborated that another

patient told her not to take a shower "because of his nieces" and instead, to just "wash off" in the sink. She explained that she does so by applying lotion to her body, rinsing it off, and patting herself dry with a washcloth.

¶ 14 Despite Powell's assertion that the evidence was insufficient because the People "provided no substantial evidence indicating an inability to care for herself," the record shows that Powell is unable to provide for her own basic needs, especially as they relate to her medical care. Dr. Maksymenko testified that Powell denies having "any mental issue," does not believe she needs any medications, and instead believes that there is a "chip" inside of her stomach. Powell agreed, testifying that she does not believe she has a mental health disorder, she "object[s]" to taking any medications because she does not need them, and "the chip . . . part is true."

¶ 15 Dr. Maksymenko also opined that, without treatment, Powell's prognosis would not improve and "potentially could . . . get worse." He noted that "psychosis is a debilitating disease" and each episode of psychosis decreases a patient's ability to function. Dr. Maksymenko testified that during Powell's prior visits to the emergency room she "was better organized." But more recently,

"she was found by several doctors" at Children's Hospital "to be disorganized," he "found her disorganized," and another physician working with him "also observed her and he believes she's . . . disorganized." And he testified that Powell had not improved in the three weeks or so since she was brought to Highland for treatment.

¶ 16    "Mental health statutes must be strictly construed because of their curtailment of personal liberty." *People in Interest of Schmidt*, 720 P.2d 629, 630 (Colo. App. 1986); *see also People in Interest of Dveirin*, 755 P.2d 1207, 1209 (Colo. 1988) ("Because of the curtailment of personal liberty which results from certification of mental illness, strict adherence to the procedural requirements of the civil commitment statutes is required."). However, where, as here, the district court's findings are supported by the record, we must defer to them on review. *See Ramsey*, ¶ 38. Accordingly, viewed in the light most favorable to the People, we conclude that sufficient evidence supports the court's finding that Powell is gravely disabled.

C.    Involuntary Administration of Medication

¶ 17    An order for involuntary administration of medications must be supported by clear and convincing evidence that:

8

(1) the patient is incompetent to effectively participate in the treatment decision;

(2) treatment by antipsychotic medication is necessary to prevent a significant and likely long-term deterioration in the patient's mental condition or to prevent the likelihood of the patient's causing serious harm to himself or others in the institution;

(3) a less intrusive treatment alternative is not available; and

(4) the patient's need for treatment by antipsychotic medication is sufficiently compelling to override any bona fide and legitimate interest of the patient in refusing treatment.

*Medina*, 705 P.2d at 973.

¶ 18    Powell contends that the evidence presented at the hearing was insufficient to support the involuntary medication order.  While she concedes that sufficient evidence established that the first, second, and third *Medina* elements were satisfied, she asserts that insufficient evidence established the fourth element.  We disagree.

¶ 19    In assessing the fourth *Medina* element — whether the patient's need for treatment is sufficiently compelling to override any legitimate interest in refusing treatment — a court must consider "whether the patient's refusal is bona fide and legitimate" and, if it is, "whether the prognosis without treatment is so

9

unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Id.* at 974.

¶ 20     Powell contends that the state's interest in treating her is insufficient to overcome her bona fide and legitimate interest in avoiding severe side effects by refusing treatment.  More specifically, she claims that the district court did not properly weigh her interests against those of the state because the court found that treatment was necessary for her to "get back to her life," but she has been "living a life outside of the institute since her last hospitalization in 2016."  Additionally, she asserts that the court erred by finding that the potential benefits outweigh the risks of forcibly administering medications because there "is no immediate threat to her well-being" and many of the potential side effects of the requested medications "are irreversible."

¶ 21     The district court acknowledged the possible side effects associated with the requested medications.  However, after weighing witness credibility and the court's own observations of Powell during the hearing, the court nevertheless found that because of

10

Powell's "level of psychosis right now . . . the only way to treat that psychosis is through medicine." The record supports these findings.

¶ 22 While Dr. Maksymenko testified that the requested medications "have unfortunately a number of side effects," some of which are very serious, he also testified that Powell had not improved in the three weeks that she had been at Highland and the failure to medicate her could cause her symptoms to get worse and prevent her from properly caring for her child. Dr. Maksymenko also testified that Powell has continuously refused to take medication because she "doesn't believe she needs any of those medications." Thus, he opined that, at "this stage," there were "no[t] any other options; we just have to proceed with the medication treatment." In support, he explained, "psychosis is a debilitating disease" and again stated that every "episode of psychosis decrease[s the] function of our patients." Therefore, if they could "prevent that next episode of psychosis" Powell "could be much more functional on [her] baseline than during psychosis [a]nd every episode after psychosis."

¶ 23 Beyond this, Dr. Maksymenko testified that Powell would be monitored through lab work for any possible side effects that might occur once she started the requested medication regimen, and additional medications were requested and available to neutralize some of those side effects.

¶ 24 We do not doubt that Powell's concerns in avoiding harmful side effects are bona fide and legitimate. However, because the record supports the district court's findings, we conclude it did not err by finding that Powell's compelling need for treatment overrode any desire she might have in refusing the requested medications.

### III. Disposition

¶ 25 The order is affirmed.

JUDGE LIPINSKY and JUDGE LUM concur.